### LEWEN, BY HER NEXT FRIEND, V. STONE, *et al.*

1. An execution, at the suit of S. against the husband of the complainant, having been levied on certain slaves, she filed her bill to injoin the sale, alleging, 1st. That she is entitled to a separate estate in the property, under the will of her father. 2nd. If she is not entitled to a separate estate, then, herself and son, by a former marriage, are entitled to an exclusive interest in the slaves, in virtue of the laws of Louisiana, where she was domiciled, and in possession of them, at the time of her last marriage; and, 3rd. If both the preceding grounds fail, then she claims to hold by the permission of the administrator of her first husband, and as *Dative Tutrix* of her son, appointed in Louisiana—the property never having been distributed: *Held*, that the bill was not demurrable for want of equity, want of parties, or multifariousness, that its purpose was not to put her in the enjoyment of what she supposes to be her right, but to obtain the protective power of chancery, to prevent a disturbance of her possession, and the different allegations are regarded as the assertion of so many reasons why it should be granted.

THE appellant, who is a feme covert, filed her bill in the Court of Chancery, sitting at Tuskaloosa, stating that about the third of November, in the year 1834, she intermarried with Alva Prescott, of the State of Mississippi; that after her marriage, and during coverture, her father (John Rogers) died, in the county of Copiah, in that State, having first made his last will and testament, which was duly proved and recorded in the proper Court of that county, and letters testamentary thereon, issued to Alva Prescott and Wm. T. Scott, the persons designated as executors by the testator. The will, among other bequests, contains one as follows: "I give my beloved daughter Mary Ann, wife of Alva Prescott, all the land owned by me in township ten, range seven, east, in section twenty-seven and twenty-eight, and nine, with all the appurtenances thereto

belonging; also, with the exception hereafter mentioned, all my stock of cattle, horses, hogs, farming utensils, waggon and team, and household furniture, &c. And also, I give my said daughter, Mary Ann, wife of the said Alva, twenty-two negroes, to wit: Alpha," &c. "The property hereby given and bequeathed to my said daughter, Mary Ann, and to her heirs alone, if any there should be, and that of her body alone, and in default, the property hereby bequeathed, is to return to my brothers and sisters, and to Alva Prescott, in equal shares."

The complainant alleges, that the slaves bequeathed to her by the will of her father, were delivered to her, to be held to her sole and separate use, and have remained in her possession without disturbance or claim from any source, until a short time previous to the exhibition of her bill. That by the bequest to her, a separate estate was created, and had been so conceded by all concerned, until the time referred to. That after receiving the possession of the slaves as aforesaid, her husband, Alva Prescott, in the year 1837, removed into the Parish of Caddo, in the State of Louisiana, where the complainant, with the slaves in her possession as aforesaid, resided with him up to the period of his death, which took place nine or ten months after his removal. At the time of the death of her then husband, the complainant was the mother of a son, the issue of her marriage, named John Thomas, (who is still living with her, aged about five years) of whose person and estate, she was duly appointed "dative tutrix," by the proper Court of the Parish of Caddo." *And further*, administration of the estate of Alva Prescott, was granted to one Robert V. Marye, of that Parish, who has not made final settlement thereof.

The complainant also alleges, that in August, 1838, in the Parish of Caddo aforesaid, she intermarried with Charles W. Lewen, one of the defendants, and in February, 1839, removed with him to the county of Tuskaloosa, where they now reside; bringing with her, in her separate possession and enjoyment, the slaves in question. That a few days previous to the exhibition of this bill, the sheriff of Tuskaloosa county levied an execution which issued from the Court of Chancery in favor of Wm. D. Stone, against Charles W. Lewen, on some of the slaves and their increase, bequeathed to the complainant as

aforesaid, and who are described as follows: "Clint, or Clinton," &c.

It was alleged that the liability on which the decree in favor of Stone was rendered, originated long before the defendant Lewen intermarried with the complainant; notwithstanding which, the said Stone, with a full knowledge of the complainant's claim to the slaves, (as she believes,) is desirous of subjecting them to the satisfaction of his execution.

The complainant then insists that the slaves in question are not liable to the payment of the execution for the following reasons: 1. By the will of her father, they are bequeathed to her sole and separate use, and the ordinary marital rights do not attach to property thus circumstanced. 2. If the form of the bequest does not create a separate estate to her use, then, the right to the slaves vested in her former husband, whose estate has not been settled, but remains in Robert V. Marye as the administrator thereof, subject when settled, to be distributed to the complainant and her son.

It is further stated, that by the laws of Louisiana, no interest whatever in the property of the wife, passes to the husband in virtue of the marriage; and if the complainant had no separate estate in the slaves, then her possession was only as a trustee for Marye, the administrator.

The bill, after setting out the other usual formal parts, prays process of *subpœna* for Charles W. Lewen and Wm. D. Stone, and that they may answer; prays an injunction as to farther proceedings on Stone's execution against the slaves, and concludes as follows: "The premises considered, may it please your Honor to decree, that said Wm. D. Stone and his confederates, and all others concerned herein, be perpetually injoined from intermeddling with, or any way disturbing the possession and enjoyment of the aforesaid slaves of your oratrix; and if your oratrix has mistaken the relief proper to be granted her in the premises, your oratrix prays your Honor to grant her such other and further relief in the premises, as to your Honor may seem right and proper, according to the rules of equity, and the course of this Court," &c.

An injunction was awarded in conformity to the prayer of the bill. The defendant, Lewen, answered the bill, admitting its allegations and inferences, disclaiming all right to the slaves

bequeathed to his wife by her father, and consenting, that if necessary, the same may be settled to her sole and separate use. The defendant, Stone, demurred to the bill, assigning as causes of demurrer, that it is multifarious, repugnant, contains a misjoinder of causes of complaint, and does not disclose a sufficient ground for equitable relief.

The cause came on to be heard on the demurrer, and the Chancellor being of opinion that the bill was multifarious, dismissed it without costs and without prejudice. To revise that decree, the complainant appealed to this Court.

COCHRAN, with whom was CRABB, for the appellant, insisted,

1. A bill may be predicated upon several claims to the same property; some claiming the absolute interest; others the right of possession. Story's Eq. Plead. 233, § 284; Varick v. Smith, 5 Paige Rep. 160.

2. There are sufficient parties before the Court. The object of the bill is not to affect the title as to Marye; he was not an indispensable party, and being out of the jurisdiction of the Court, might well be omitted. Story's Eq. Plead, 79, § 78-80; Gayle, et al. v. Singleton, 1 Stew't Rep. 566.

3. The right of possession is sufficient to maintain a bill for an injunction. 2 Story's Eq. § 882, 912, 914, 928, 929, 956.

4. If a bill professes to state several grounds for relief, some of which are good, and others not, the Court will entertain the bill, but disregard the objectionable parts. Story's Eq. Plead. 232, § 238; Varick v. Smith, 5 Paige's Rep. 160; Gayle v. Singleton, 1 Stew't Rep. 566.

PECK and CLARK, for the appellee, Stone. A bill that alleges title in the alternative, is bad on demurrer. Story's Eq. Plead. 392; 3 ibid. 208-9, § 244-5. When a bill is filed with a double aspect, the grounds of relief must be consistent with each other. 212-13, § 254.

If the complainant claims as a distributee, and distribution be made after removal to Alabama, then the marital rights of the husband will attach. This shows, that in this view of the case, the complainant has no interest whatever, except the right of survivorship, if her husband dies before distribution is made.

It was said by Lord Eldon, that where there is no marriage contract, the law of the actual domicil will govern, as to all pro-

perty, without distinction, whether acquired before or after a change of domicil.  Lashley v. Hogg, cited in Robertson's Appeal Cases, 4.  See Story's Conf. Laws, 150 ; Decouche v. Savetier, 3 Johns. Ch. Rep. 210–14–15.

Where property is conveyed to a trustee, in trust for the sole and separate use of a married woman, and she survives her husband and marries again, she no longer holds the property to her separate use, but her whole interest, if it be personal property, vests in her second husband.  Miller v. Bingham, et al. ex'r., 1 Iredell's Eq. Rep. 423; Knight v. Knight, 9 Cond. Ch. Rep. 199; Benson v. Benson, ibid. 201.

COLLIER, C. J.—If the defendant, Lewen, had not a legal interest in the slaves in controversy, then they were not subject to levy and sale, under the execution of Stone.  That execution though issued from the Court of Chancery, we infer, is founded on a monied decree, which does not specifically direct the slaves to be sold in order to its payment; consequently, if the title to them had not vested in Lewen, they could not be regularly reached by execution.  Supposing such to have been the condition of the property, it was competent for the person having the legal title to have interposed a claim, and tried the right as provided by the statute; and if that person was absent from the country, or legally incapable of litigating the right under the statute, then a Court of Equity, ex necessitate, or to prevent great or irreparable injury, would interpose by way of injunction, at the instance of a party, showing a sufficient interest in the subject.

The object of the complainant's bill, is professedly to arrest all further proceedings upon the execution of Stone, and to discharge the slaves from its levy; and the ground of equity alleged is, that Lewen, as husband, never acquired the possession of the slaves ; because they were bequeathed by the complainants father, to her sole and separate use.  If, by the bequest in the will of her father, a separate estate was not created, then she and her child by a former marriage, are entitled to the entire property in the slaves, and the laws of Louisiana, where her last marriage took place, does not entitle her present husband to any part of her estate.  And further, the estate of her first husband has not been settled by the administrator appointed in

Louisiana, and she was duly appointed in that State "*Dative Tutrix*" of her son; upon this latter ground, if the former fail, she claims to hold the slaves.

These allegations seem to us to be entirely consistent with each other, and can only be regarded as so many distinct reasons why an injunction should be awarded. The bequest in the will of John Rogers, deceased, is first relied on, as giving the complainant a separate estate; if that shall not thus operate, then she insists that the slaves were the property of her first husband, and never having been distributed, have not vested in her present husband; and if the laws of Louisiana are applicable, no property could vest in him, her estate and domicil being there, and her marriage there consummated. The grounds stated, as entitling the complainant to relief, may affect her rights differently; under one, she would be the exclusive proprietor of the slaves, while under the other, she would be entitled to them conjointly with her son, after the estate of her former husband was settled; but we cannot think, that for this reason, the bill is multifarious, or that there is a misjoinder of causes of complaint. In the causes stated, the complainant and the defendant, Stone, are both interested, for if either be available, it will be shown, that the interest of the former had never vested in her husband, *jure mariti*, and consequently, that the execution of Stone could not be satisfied by the sale of the slaves.

If the bill be multifarious, it must be upon the ground, that it unites several distinct matters, perfectly unconnected against the defendant, Stone. If this were an original bill, seeking to set up an estate in the complainant, founded upon all the sources stated, the objection might be available; but such is not its character. It is not an original bill to put her in the enjoyment of what she supposes to be her right, but it is an appeal to the preventive power of chancery, to protect her possession, asserting several reasons to show why it should not be disturbed. If the complainant's interest be such as she supposes, it is clearly competent for equity to afford her relief. In the first case, if the will of her father gave a separate estate, it is clear that the property cannot be sold to pay her husband's debts: in the second, as the marital rights of the husband have not attached upon the slaves, a Court of Chancery will enjoin him,

or his assignee from taking possession of them, and *a fortiori*, his judgment creditor, from selling them under execution, until a suitable settlement shall be made upon her.    Dunn and wife, *et al* v. The Bank of Mobile, *et al.* 2 Ala. Rep. N. S. 152; 2 Story's Eq. 630, '33, '35, 641; Roper on Husband and Wife, 250; Atherley on Mar. Sett. 350.

If has been frequently remarked, that it is difficult, if not impossible to educe from the authorities any rule of universal application, or as an abstract proposition, to say what constitutes multifariousness.    The courts do not favor the objection, where its allowance does not appear to be promotive of justice, and consequently, are very much disinclined to extend the principle on which the cases heretofore occuring have been decided. A familiar, and perhaps the most usual case of multifariousness, is where a defendant has no connexion whatever with a large portion of the record, and the case made by it.    But if the view we have taken of the complainant's right to go into equity, be well founded, it is perfectly clear that the case stated in the bill in every aspect, concerns the defendant, Stone.

Again: it has been said, if a bill does not pray for multifarious relief, it cannot be demurred to for multifariousness; though the case would support a prayer for such relief: Dick v. Dick, 1 Hogan Rep. 290.    In the present case, the prayer is for an injunction to prevent any disturbance of the complainant's possession and enjoyment of the slaves by Stone, and if such be not the redress to which she is entitled, she then asks for such relief as may be appropriate.    This is not a multifarious but an alternative prayer, and if the case cited may be regarded as an authority, the bill is free from the objection alleged.

If the administrator of Prescott, and the infant son of intestate, were made parties, and a prayer added for the settlement of the intestates estate, &c. we will not say that the bill would be multifarious in introducing into the record, matters independent of, and distinct from the case of the complainant and the defendant, Stone; but certain it is, that if thus changed, it would be more liable to the objection, than it now is.    And if it be necessary to modify the bill, in order to entertain it, the Court would not, immediately upon its being amended repudiate it for multifariousness; this would be in effect, to declare, that although the case stated, was *prima facie* a good one, yet

Lewen, by her next. friend, *v.* Stone, *et al.*

Chancery was too much trammelled in its mode of procedure, to adjudicate it; a principle which that Court cannot recognize. To such a state of things, the remarks of Lord Cottenham, in Mare v. Malachy, 1 Mylne & Craig's Rep. 559, are strikingly appropriate. It is the duty, says he, of every Court of Equity to adapt its practice and course of proceeding, as far as possible, to the existing state of society, and to apply its jurisdiction to all new cases, which from the progress daily making in the affairs of men, must continually arise; and not from too strict an adherence to forms and rules established under very different circumstances, to decline to administer justice, and to enforce rights, for which there is no other remedy.

The *onus* of sustaining the allegations of the complainant's bill, rests upon her, if a negative answer is interposed, and if she shall establish either of the grounds on which she places her title to relief, the injunction must be continued. If under the will of her father, it shall be determined that she is entitled to a separate estate, or the laws of Louisiana, invest herself and her son with a joint but exclusive interest, then the defendant, Stone, cannot pursue the property further; but if neither of these grounds shall be sustained, and it shall appear that the estate of Prescott has not been settled, he may go into equity and coerce a settlement, and distribution of the estate, subject however to the payment of the debts of the intestate and a suitable provision for the complainant.

As this cause was disposed of by the Court of Chancery upon a question of pleading, we have forborne to consider the merits of the case, thinking it best, that it should be left open to examination, when brought to a hearing. We have only to add, that the decree is reversed, and the cause remanded.