# CUMMINGS & COOPER v. McCULLOUGH, ADM'RX.

1. The acts of 24th January 1829, of the 10th January 1831, of the 18th January 1832, of 10th January 1835, and of the 25th December 1836, extending the time for the registration of deeds, are registry acts merely, and were not intended to repeal, modify, or change the act of the 11th January 1828, for the prevention of frauds.

2. Deeds of assignment of property in trust to pay creditors, are embraced by the terms of the act of 11th January 1828.

3. A conveyance by a father-in-law to a son-in-law, of one half a lot for the consideration, as expressed in the deed, of twenty-nine hundred and twenty-five dollars, but the true consideration, the note of a third person, then past due, which was transferred by delivery merely, and has never been collected, the deed being made two days before the execution of a deed of assignment of the property of the father-in-law to the son-in-law, as trustee, and with a knowledge of his insolvency—held, fraudulent and void as to creditors.

4. Where a deed conveyed to a trustee, all the real and personal property, *choses in action*, &c. of the grantor, in general terms, and without any description or schedule, except three slaves described by name, for the payment of creditors, to some of whom a preference is given, but only one specified by name, and no list of their names or of the amounts due them, nor any provision for the creditors to become parties to the deed, or notice to be given them, and no notice in fact given—held, that although neither of these facts singly, or even all taken together, might be conclusive evidence of fraud, that they raise the presumption of fraud, subject to explanation by the other facts attending the transaction.

5. The retaining possession by the grantor, of a portion of the trust property for more than three years, is a badge of fraud, which is not explained by an alleged contract of hiring, set up in the answer, the terms and conditions of which are not given, and nothing appearing to have been received; nor is it a sufficient excuse for failing to sell the property, that it was reserved from sale that it might appreciate in value, a portion of the property, being slaves of from near forty to seventy years of age.

6. The title to real estate sold by order of the county court, remains in the heirs of the deceased, until the court decrees a title to be made to the purchaser, and the title is in fact made, nothwithstanding the court may have approved the bond given with surety for the purchase money.

7. Although a deed of assignment may be declared fraudulent and void, at the instance of a creditor, the title of purchasers of the trust property from the trustee previous to the filing of the bill and without notice of the fraud, will be protected; and the trustee in the settlement of the account will be entitled to a credit for all payments to the creditors of the assignor made previous to the filing of

the bill, from the proceeds of the *choses in action* placed under his control by the assignment.

8. Where the allegation of the bill was that a deed was not made upon the consideration expressed in it, or the consideration *bona fide* paid, or secured to be paid, held, that the answer stating that the consideration of the deed was the note of a third person, six months past due, which was transferred by delivery to the grantor, and was then by them *considered good*, was not responsive to the allegation, the deed expressing a monied consideration.

ERROR to the Chancery Court at Tuskaloosa.

This bill was filed by the defendant in error, to vacate, for fraud, a deed made by the defendant Cummings, to defendant Cooper, on the 19th January 1839; and also a deed made two days afterwards by the former to the latter, conveying all the property, real and personal, *choses* in action, &c. of the grantor, in trust for the payment of the creditors of the assignor.

The bill charges that the complainants intestate died in 1837, possessed of considerable real and personal estate, leaving his widow and three heirs at law. That one McGuire, was appionted administrator, who petitioned the Orphans' court of Tuskaloosa, for an order to sell the real estate of the deceased, which was granted, and in January, 1838, the real estate, consisting of two parts of lot 162 in Tuskaloosa, were sold to defendant Cummings, for twenty-three hundred and fifty dollars, to be paid in three equal instalments, for which he gave three promissory notes with surety. The sale was confirmed by the court, but no title made to Cummings, at his request. That suits were brought and judgment recovered on each of the notes, and executions issued thereon, returned no property found.

That at the sale of the personal property, Cummings also became a purchaser, for which judgment was also recovered against him and his sureties, for seven hundred and sixty-nine dollars seventy-two cents, and execution returned no property found. That Cummings, at said sale, became the surety of one Young, for the purchase money of a slave, upon which judgment has been obtained for six hundred and ninety-one dollars twenty-five cents, and execution returned *nulla bona*. That all of said judgments remain unsatisfied, and that none of the defendants thereto, have any property which can be reached at law, and that complainant was appointed administrator, *de bonis non*.

That at the date of the notes, Cummings was possessed of a large real and personal estate, and engaged in business as a merchant tailor. That a part of said real estate has been sold to one Clare; a part to defendant Cooper, and a part to Hale & Eaton, that a large part of the purchase money is still due from Hale & Eaton, the notes for which are now in suit in the name of Cooper as assignee.

That on the 21st January, 1839, defendant Cummings by deed of that date, made a general assignment of all his real and personal estate, as well as his choses in action of every description, to Cooper, in trust, to take possession thereof and dispose of the same for the payment of the crditors of Cummings according to a classification described in the deed; that the deed was not filed for registration until the first April, 1839, in consequence of which, it is charged to be void as against the creditors of Cummings. That the deed was not made at the instance of, or consented to by any creditor of Cummings, nor is any one of them a party to the deed. That Cooper has not taken possession of the property, nor sold the same, nor has he paid the debts of Cummings; that the deed was made with the intent to delay, hinder and defraud the creditors of Cummings, and therefore void.

That on the 17th July, 1838, defendant Cummings, by deed of that date, conveyed to Cooper one half of lot 161, on which is a brick store house, for the consideration, as expressed in the deed, of twenty-nine hundred and twenty-five dollars; and afterwards, on the 19th January, 1839, conveyed to him the remaining half of the lot for the same pretended consideration. That on the 8th January 1839, Cummings & Cooper, by deed, conveyed to Hale & Eaton, a part of lot 161, for twenty-eight hundred dollars, payable in three instalments, on the 28th May, 1839, 1840, and 1841, who gave to said Cummings & Cooper a mortgage on the premises. That the first instalment has been paid, and the other two remain unpaid, suits having been brought thereon in the name of Cooper.

That at the date of the pretended deed of the 17th July 1838, Cooper was a young man apparently without means, having shortly before that time married the daughter of Cummings, and was, or pretended to be, his partner in the tailoring business. That neither the deed of the 17th July, 1838, or that of the 19th January, or either of them, were made upon the consideration express-

ed on their face, *bona fide* paid by Cooper to Cummings, or secured to be paid, but were voluntary or fraudulent.

That the conveyance to Clare, was either fraudulent, or that the purchase money is still due, and that the notes of Hale & Eaton were transferred to Cooper without consideration, and in fraud of creditors.

The prayer of the bill is, that the various deeds be declared fraudulent and void; that Cooper be compelled to account, &c.

Hale & Eaton failing to answer, the bill was, as to them, taken as confessed.

Clare states in his answer, that he purchased fairly from Cummings, and paid the purchase money in cash.

Cummings & Cooper answer jointly, and admit the purchase of the real and personal property of complainants intestate, judgments, return of executions, &c., as stated in the bill; admit the sale to Clare, but insist that it was fair, and that the purchase money has been paid: admit the sale of lot 161, at the times stated in the bill. They aver the fairness of the sales—that the consideration of the first sale was paid by Cooper in cash; that the consideration of the deed of 19th January, 1839, was the note of William A. Leland and John C. Cabaniss, for five thousand dollars, upon which is a credit of two thousand dollars, payable to Cooper, dated 15th June, 1838, and due one day after date, which they considered good, and which was transferred by delivery to Cummings. They admit the assignment of the notes of Hale & Eaton to Cooper, and that suits thereon are pending.

They admit the execution of the deed of assignment, and aver its fairness; that the object was not to defraud the creditors of Cummings, but to pay them. The deed is made an exhibit. They state that the personal property and assets conveyed by the assignment, have ever since the deed, been in the possession of Cooper; that the slaves were hired by Cooper to Cummings, who retained the same; they were not sold from a desire to obtain a good price for them—that from the date of the deed to the time of filing the bill, the slaves had appreciated in value. That there was no demand for the real property. That in March, 1842, a tornado passed over the dwelling house and destroyed it, and injured one of the slaves. The slaves were, one thirty-five, one forty or forty-five, and one sixty or seventy years of age. That

since then the real estate, furniture &c., and slaves have been sold.

Cooper states that he entered into partnership with Cummings on the 10th December, 1837, when he agreed with Cummings for the purchase of one half the lot on which the brick store house now stands, the cellar of which was only then dug, and that he paid out of his private funds, his portion of the expense of building the house; that he was then worth more than ten thousand dollars, and so reputed. Both defendants stated that the partnership continued until 21st January, 1839, at which time Cooper purchased the interest of Cummings, the stock amounting then to four thousand and sixteen dollars ninety eight cents. Cooper states that at the dissolution of the firm, he was in advance to the concern two thousand dollars, and that Cummings was indebted thirteen hundred dollars.

Cummings admits that he considered himself insolvent on the 19th January, 1839; but that he considered his property sufficient to pay his own debts. Both defendants deny that either of the deeds were voluntary or fraudulent, but insist that they were *bona fide*, &c.

Accompanying the answer are statements showing the property assigned by the deed—the amount of money collected since the 21st January, 1839, and payments made under the assignment. The bill is demurred to for multifariousness.

The cause coming on for trial on bill, answers and exhibits, the chancellor decreed that the deed of 19th January 1839, from Cummings to Cooper, and the deed of assignment, to be fraudulent and void, and directed a sale to be made of the interest of Cummings in lot 161, also of his equitable interest in lot No. 162: That Cooper be considered a trustee for the benefit of complainant, and that he accounts with complainant for all the moneis which have come to his hands by virtue of the assignment, and for one half the proceeds of the sale to Hale & Eaton, to be applied in discharge of complainants demand, &c. That the bill be dismissed as to Clare.

The assignments of error are,

1. Overruling the demurrer to the bill.

2. Declaring the assignment void, because not recorded within sixty days.

3. Declaring the assignment void in fact.

4. Declaring the deed of 19th January, 1839, void in fact.

5. Declaring the assignment of the notes of Hale & Eaton· void.

6. Decreeing the sale of two parts of lot 162.

7. Requiring Cooper to account for the stock in trade.

8. In charging him with all moneys, which have come to his hands, and not allowing him credits for payments to creditors.

9. In not dismissing the bill.

·W. Cochran, for plaintiff in error.
Peck & Clark. contra.

ORMOND, J.—The first question presented on the record, whether the act of 11th January, 1828, Aik. Di. 208, by which deeds and conveyances of real and personal property in trust, are declared void against creditors and subsequent purchasers without notice, unless recorded within the time prescribed by the act, has not been changed and in effect repealed by subsequent enactments on the same subject, is one of great interest and of some difficulty.

To a proper understanding of it, it is necessary to take a brief view of the entire legislation on this subject.

In 1803 the statute of frauds was passed, by which certain deeds were declared void, unless proved and recorded within twelve months, in the superior or county court where one of the parties lived. At the same session, and frequently since that time, acts were passed for the registration of absolute deeds of real estate. [Aik. Dig. 88.]

On the 11th January, 1828, an act was passed to prevent fraudulent conveyances, which required all deeds made in trust for the payment of debts, if of personal property, to be recorded within thirty days, or if of real property within sixty days from the execution thereof, or else to be void against creditors, and subsequent purchasers without notice.

At the same session, on the 15th January, 1828, an act was passed declaring all deeds valid if recorded within six months after their execution, and all deeds recorded after that period to be operative from the date of their registration.

This act being supposed to conflict with and repeal the former, at the succeeding session an act was passed declaring that the act of 11th January, 1828, should stand in full force, and that the

act of 15th January should apply only where property was con-veyed absolutely, and not upon any trust or condition.

On the 24th January, 1829, an act was passed extending the time of registering deeds, to twelve months after its passage. On the 10th January 1831, the time of registering deeds was extended to eighteen months after its passage; and on the 18th January 1832, the time for registerting deeds of "real and *personal* estate" was extended to one year from the passage of the act. On the 10th January, 1835, it was enacted, that hereafter it shall at all times be lawful for any person or persons who have failed to have deeds and conveyances of real or personal estate recorded within the time prescribed by law, to have them recorded: *Provided*, that such registration shall not affect the rights of subsequent purchasers, or creditors, which may have vested previous to such registration, any law to the contrary notwithstanding.

And finally on the 25th December, 1836, an act was passed extending the time of registering deeds of real and personal estate, to six months from the passage of the act. All these acts last enumerated, passed since 1828, were evidently merely intended to extend the time for the registration of absolute deeds, and even for that purpose were wholly unnecessary, as the act of 15th January 1828, declared, that all absolute deeds should be valid and operative from the date of their registration, if not recorded within six months after their execution. These acts were therefore, evidently passed without any distinct conception of the existing law.

The only difficulty which arises from this unnecessary legislation, proceeds from the terms, "deeds of personal property" found in the acts of 1832, 1835 and 1836, which it is insisted must have been intended to operate on the act of 11th January, 1828, as that is the only statute which requires such deeds to be recorded.

The difference between the registration acts, properly so called, and the act of the 11th January, 1828, for the prevention of fraudulent conveyances, is quite obvious. By the latter, the deed is declared *void* as to creditors and subsequent purchasers, if not recorded within the time required by law; by the former acts, if the deed be recorded within six months, it is operative against all persons from the date of its execution, and if recorded after that time, is operative in like manner from the date of its registra-

tion. The object of the latter is notice merely, whilst the design of the former is the prevention of fraud. To accomplish which it requires prompt notice to be given of the execution of the deed, not only to prevent a delusive credit from being obtained by the apparent ownership of property, but also to prevent such deeds from being *ante dated,* which can only be effectually prevented by requiring them to be published soon after they are made.

If these enumerated acts, passed since 1828, are held to apply to the act for the prevention of fraudulent conveyances, they effectually destroy its vital principle, by permitting the deed to be kept *secret* for a great length of time, and, indeed, by the act passed in 1835, which permits the registration to be made at any after period, virtually repeal it. It is incredible that the Legislature should have intended thus to repeal, by indirection, one of the most important acts on the statute book. It is much more respectful to that body to suppose that in the hurry of business, the *terms* of these acts, which, as they were ostensibly mere registry acts, and the rights of creditors and subsequent purchasers were guarded, were not properly scanned, than to hold that they deliberately left the community to grope in the dark, uncertain whether or not, it was its intention virtually to repeal so important an act.

If, however, the act of 1835 could apply to *deeds of personal* property required to be recorded by the act of 11th Jan. 1828, that act was itself repealed by the act passed at the succeeding session, on 23d December, 1836, which requires all persons who have failed to have such deeds recorded within the time required by law, to record them within *six months* from the passage of that act. [Meek's Sup. 85.] This time had expired befor this deed was made, and it must therefore be governed by the act of 11th Jan. 1828. This settles the question as to this deed; but we are entirely satisfied that it was not the intention of the legislature to repeal, modify or change the act of 11th January 1828 by any of the subsequent acts which have been enumerated. That these last mentioned acts are registry acts merely, and were designed to apply to absolute deeds only.

It was also argued that this deed was not embraced by the act of 11th January, 1828, which, it was contended, was only intended to operate on deeds conveying property in trust to secure the payment of debts between the parties to the deed, and did not reach assignments of property in trust to pay creditors.

Deeds of this description are not only within the mischief, but are within the letter of the law; they are literally " conveyances to secure debts," and no reason has presented itself to our minds authorising such a departure not only from the intent, but from the very words of the statute.

What is meant by the term "creditor" in the act of 11th January, 1828, it is not necessary now to consider, as we think the entire transaction fraudulent and void.

The facts are, that the defendants Cummings and Cooper stand to each other in the relation of father-in-law and son-in-law, and were partners in trade; that on the 19th of January, 1839, Cummings conveyed to Cooper, one half of a lot of ground in Tuskaloosa, on which was a brick store house, for the consideration, as stated in the deed, of twenty-nine hundred and twenty-five dollars, having a year or two previously sold him the other half at the same price. On the 21st of the same month, Cummings made a deed of assignment to Cooper, of all his effects, real and personal, and all his title thereto, whether legal or equitable, including three slaves, house-hold and kitchen furniture, choses in action, &c., upon trust, that Cooper should take possession thereof, and manage, sell and dispose of it, collect debts, &c. as he should deem most for the interest of the creditors; and from the proceeds first to pay a debt due the State Bank; second, to pay all the individual debts of Cummings; the debts of Cummings & Cooper, and of Cummings & Mason; and lastly all other creditors in equal proportion. The deed is executed by Cummings & Cooper alone, and it does not appear that any of the creditors were privy to, or assenting to it.

These deeds the bill charges to have been made with the intent to delay, hinder and defraud creditors. The answer of both Cummings & Cooper, insist that they were both fair and *bona fide*. That the consideration of the deed for one half the lot to Cooper, was a note made by W. A. Leland and J. C. Cabaniss to Cooper, on the 13th June, 1838, for five thousand dollars, due one day after date, on which was a credit of two thousand dollars, which was transferred to Cummings by delivery, and was then considered good, and is now part of the assets of Cummings. That the design of the deed of assignment was to secure to the creditors of Cummings, a just distribution of his property, and was made *bona fide*.

The chancellor considered the conveyance to Cooper, and the deed of assignment, as parts of the same transaction; we have attained the same conclusion.   The insolvent condition of Cummings was known when the pretended sale was made to Cooper, and two days afterwards the product of the sale passes into the hands of Cooper, as part of the effects of Cummings, conveyed by the trust deed.   The sale by Cummings of such a valuable portion of his property, immediately preceding the making of the assignment, is of itself a suspicious circumstance; but in addition, it is sold to a near relation, not for money or any thing of real value, but for dishonored paper, and not even the precaution taken of an assignment from Cooper, but a mere transfer by delivery, which in two days passes back to Cooper, in his capacity of trustee, who, it does not appear, has ever made an effort to recover the money.   The whole transaction wears the aspect of unfairness, and has not one of the features of a real *bona fide* sale. It is possible that these suspicious circumstances, which are so many badges of fraud, might admit of explanation; but they are not attempted to be explained further than by the repeated asseveration, that all was fair and *bona fide;* and unexplained, they irresistibly lead the mind to the conclusion, that this pretended sale, was a scheme to transfer this valuable property to a relation, without any real consideration, and thus place it beyond the reach of creditors.

It is, however, insisted that the answer of Cooper is evidence for him, and by that it appears that the note of Leland and Cabaniss, was *considered good* at the time it was received by Cummings.   It is certainly the well establish rule in chancery that when an answer is directly responsive to an allegation of the bill, it is evidence for the defendant; but when the defendant in his answer, sets up new matter in avoidance of an allegation of the bill, as he puts such fact in issue, he assumes the burden of proving it, unless under the rule adopted by this court, the complainant waives the necessity of such proof by going to trial by *consent,* on bill and answer, which was not done in this case.

The allegation of the bill is, that the deed of the 19th January, was not made upon the considertion expressed in it, or *bona fide* paid to the said Cummings by the said Cooper, or in good faith secured to be paid, but was a voluntary conveyance, or made to the intent to delay, hinder and defraud creditors.   The interroga-

tory framed upon this allegation is, "that he state whether the same was paid in money at the time specified in the deed; if not, did he secure the same to be paid, and how and when to be paid, and has the same in fact been paid? If so, when was the payment made, and in what?"

The answer to this interrogatory is, that the consideration of the deed was the note of Leland & Cabaniss, six months past due, which was transferred to Cummings by delivery, and which "respondents considered good."

It is no where alleged in the bill that Cummings received from Cooper, as the consideration of the deed, paper which he knew to be of no value; but the allegation is, that the consideration as expressed in the deed, was neither paid by Cooper or secured to be paid. The answer in effect admits this, by showing that Cooper did not pay the consideration in money, or become bound to pay it; to avoid the effect of this admission, it is further stated that the real consideration was the note of third persons, which at the time *respondents considered good.* The *estimation* in which the defendants held this paper, at the time of this transaction, is clearly matter set up in avoidance. It is true, that the interrogatory requires the defendants to state "when the payment was made, *and in what;*" and so far as the answer shows that the payment was made in the note of a third person, it may be considered responsive to the interrogatory. But when, in addition, it is added *that at the time they considered the note good,* a new fact is introduced into the case, which is not so much as hinted at in the bill. The complainant did not profess to have any knowledge of the consideration beyond what was disclosed by the deed. From that it appeared that the consideration was paid by Cooper in money, or at least no intimation to the contrary was given, and such was the natural as well as legal inference. This, the complainant asserts to be untrue, and denies that money or its equivalent in value was paid.

It would be extremely hazardous to seek the aid of a court of chancery, if such a response to such an allegation, was evidence for the defendant, only to be countervailed by the testimony of two witnesses, or of one, with strong corroborating circumstances. Not being proved, it can avail nothing in this case. [Huntsville Branch Bank v. Marshall, *et al,* 4 Ala. 60.]

We proceed to the consideration of the deed of assignment,

made two days after the transaction just commented on. The proximity in point of time between the conveyance to Cooper, and the deed of assignment; the knowledge of Cooper and Cummings that the latter was insolvent when the deed of the 19th January was made, and the fact that the note received as the consideration of the deed of the 19th January, passed almost immediately back to Cooper, by the assignment, as part of the effects of Cummings—are sufficient to show that the assignment and the previous deed to Cooper, are parts of one entire transaction, having the same object in view—to delay, hinder or defraud the creditors of Cummings. There are, however, other circumstances attending the assignment, which, independent of the previous deed, establish its true character, of which a brief view will be taken. It does not appear that any creditor has assented to the deed, and this is, in truth, a controversy between a creditor and the grantor.

The deed of assignment conveys to the trustee all the real and personal property, and choses in action, of Cummings, in general terms, and without any description whatever, either in the body of the deed, or in any schedule annexed to it, except three slaves, who are described by their names, and confers on him authority to manage, sell, and dispose of it, collect debts, &c. as he shall deem most for the interest of the creditors. No creditor is specified by name, except the State Bank; nor is there in the body of the deed, or in a schedule attached to it, any list of the names of the creditors, or of the sums due them. There is no provision in the deed for the creditors to become parties to it, or for notice to be given them; nor does it appear that any notice in fact was given.

In the case of Robinson v. Rapelye and Smith, [2 Stewart 86,] this court held that the conveyance, by the assignor, of all his property in general terms, did not invalidate the deed; and it may be conceded that neither of the facts above enumerated, or all taken together, would be conclusive evidence of fraud; yet certainly, considered altogether, they raise the presumption of fraud, which, it is true, might be removed by other facts attending the transaction, but which, unexplained, stamp it as fraudulent. [Halcey v. Whitney, 4 Mason, 206; Wilt v. Franklin, 1 Binney 516; Hower v. Gessamine, 17 S. & R.; Hatch v. Smith, 5 Mass. 42; Keyes v. Brush, 2 Paige, 311.] It is indeed, difficult to conceive

of any thing better calculated to delay creditors, than a deed of assignment conveying all the property, real and personal, of the grantor, without any description or estimate of value, for the benefit of creditors who are not consulted, named in the deed, or the amounts due them set forth, or in any way made known.

These suspicious circumstances derive additional force from the manner in which the trust has been executed. The principal part of the debt of complainant was the individual debt of Cummings, which, by the deed, is placed in the list of preferred debts, after the payment of the debt to the Bank. Yet, although the trustee professes to have paid a large amount of debts, in addition to the debt due the Bank, no part of this debt has been paid, although he insists that the assets are nearly or quite exhausted. It was his duty, as trustee, to have paid all debts of the same degree, *pro rata*, if there was not sufficient to pay all.

No portion of the trust estate, except the choses in action, appear ever to have been in the possession of the trustee, but were left in the possession of Cummings, upon an alleged contract of hiring, the terms or conditions of which are not given, nor does any thing appear to have been received from that source. The possession remaining with the grantor, is a badge of fraud—admitting, it is true, of explanation; but the attempt to reconcile this apparent inconsistency, by the trustee, is most extraordinary. The slaves were from near forty to seventy years old, and were reserved from sale that they might appreciate in value. The same reason, in effect, is assigned for not selling the dwelling-house and other personal property; yet, we know, that from the operation of well known causes, which we take judicial notice of, all property has been depreciating in price since the date of the deed. Nor was any sale made until the dwelling-house was nearly destroyed, and the slaves injured by a tornado, in March, 1842; and when sold, it appears that all the property, except a few inconsiderable articles, was purchased at a low rate, by a son of Cummings.

We have not considered it necessary to narrate the glaring inconsistencies of the answer, and of the schedules annexed to it, because the unquestioned facts admitted by the answer, and the entire omission on the part of the defendants to explain or account for the various suspicious circumstances above described, irresistibly impel our minds to the conclusion, that the object of the

parties was, through the medium of this assignment, to delay, hin-
der and defraud the creditors of Cummings, and that it is there-
fore void.

It is also objected to the decree, that the court erred in direct-
ing a sale of the land, in which Cummings had only an equitable
interest.  These lands were purchased by Cummings at a sale,
directed by the county court, of the real estate of the intestate of
complainant, who gave bond with surety for the purchase money,
but no title was ordered to be made to him by the court, for some
reason, which does not appear.  The objection supposes, either
that the legal title vested in Cummings, on the approval, by the
Orphans' court, of the bond executed by him for the purchase
money, or that the equitable lien on the land was discharged by
the execution of the bond with surety.  As to the first supposi-
tion, it is very clear, that the approval by the court of the bond for
the purchase money, does not vest the legal title in the purchaser,
as the statute expressly requires the court to *decree* that a title be
made, and until the conveyance is in fact made, the legal title re-
mains in the heirs at law.  [Lightfoot v. Lewis's heirs, 1 Ala. R.
475.]  And as to the second, the doctrine has no application to
a case where the title is not in fact made.  The reservation of the
*title* is a plain and palpable assertion of a *lien* for the purchase
money.  [Foster v. The Athenæum, 3 Ala. 302.]  But whether
the title of Cummings was legal or equitable, it passed by the
conveyance to the trustee, and was therefore properly included
in this bill, and could only be sold by the decree of a court of
chancery.

The propriety of the decree of the chancellor, requiring the
trustee to account, and making all the monies received by him
under the trust, liable to the payment of the complainant's debt,
without allowing him credit for debts paid by him, is also ques-
tioned.  The correctness of the decree, supposing this to be its
meaning, must depend on the right the complainant acquired un-
der her judgments, and by the exhibition of her bill, as she had no
specific *lien* on the property of Cummings.  By the judgments
and execution, a *lien* was obtained on the real estate, from the
date of the judgments, and on the personalty, except *choses in
action*, from the time the executions came to the sheriff's hands.
These *liens* are rendered effectual by the decree, declaring the
deed to Cooper, and the deed of assignment, void against all per-

sons acquiring title either through Cummings or the trustee, sub-
sequent to the *filing* of the bill.    All purchasers from the trustee,
previous to that time, who bought *bona fide*, and without notice
of the fraud, are not affected by the decree avoiding the convey-
ance to the trustee for fraud.

The exhibition of the bill is in effect an appropriation, from that
time, of the equitable assets of Cummings, upon which the com-
plainant acquired no *lien* by his executions; but all payments
made to the creditors of Cummings, by the trustee, before that
time, are in effect, payments made by Cummings himself.    The
deed of assignment, though fraudulent and void as to creditors, is
at least a power of attorney from Cummings to the trustee, to pay
and discharge his debts, out of the effects placed in his hands for
that purpose.    Of these payments by the trustee, before the exhi-
bition of the bill, the defendant in error cannot complain, as they
were made from funds upon which she had no *lien*, legal or equita-
ble.    She is not therefore, prejudiced by the action of the trustee ;
the effect is the same to her as if the deed of assignment had ne-
ver been made, or the payment had been made by Cummings
himself.    The trustee must, therefore, in the account, be allowed
credit for all payments made to the creditors of Cummings previ-
ous to the filing of the bill.

As the claim of the defendant in error is against Cummings in-
dividually, and as the assets in the hands of the trustee are com-
posed of the interest of Cummings, in the firm of Cummings &
Cooper, as well as those belonging to Cummings individually, it
may become necessary to marshal-the assets in the hands of the
trustee, as the creditors of the partnership are entitled to be paid
before an individual creditor of Cummings out of the partnership
effects.    In this connexion, it may be proper to observe, that in
stating the account, Cooper must be charged with one-half the
value of the stock in trade at the time of the dissolution, which in
his answer he states that he purchased from Cummings, and that
his answer, which impliedly sets up a payment by debts due
from Cummings, is not evidence of that fact, as it is not respon-
sive to any allegation of the bill.

The objection that the bill is multifarious, cannot prevail.    The
objection is founded on the attempt made in the bill to subject the
property sold to Clare, by Cummings, to the payment of com-
plainant's debt, with which it is alledged Cooper had no connec-

tion. The transactions of Cooper and Cummings were so intimately blended, and the deed of assignment was so general, that it was impossible for the complainant, in advance, to know to what extent Cooper was interested or connected with the transactions of Cummings, or what he claimed an interest in ; and especially, the complainant had a right to know whether the purchase money had ever been paid by Clare ; if not, it was conveyed by the deed of assignment to Cooper.

This question was examined by this court in the case of Lewin v. Stone, [3 Ala. 491,] where it is held that this objection is not favored at this day, when the ends of justice are not promoted by it. Such is obviously not the fact here ; nor has the defendant Cooper been in the slightest degree prejudiced by it.

The result of this protracted examination, is, that the decree of the chancellor, in the particulars herein stated, in regard to the manner of taking the account, must be modified. In all other respects it is affirmed, and the cause remanded for further proceedings.

. Let each party pay his own costs in this court.

COLLIER, C. J.—My first impression was that the bill in this case is *multifarious ;* but an examination of its frame and object, have convinced me that it is not obnoxious to that objection. It assumes that all the property it describes, or money due for such as may have been *bona fide* sold to third persons, constitute effects and credits of Cummings, in favor of judgment creditors, although it may be claimed by others, under pretended purchases. Cummings, as between himself and the complainant, is treated as the real owner of the property and credits, and those persons who claim to be adversely interested therein, are made parties, that they may defend against their appropriation to the satisfaction of the complainant's judgment. The object of the bill is clearly single ; and although all the defendants are not jointly interested in the matters which may be litigated, yet if the allegations of the bill are true, each one of them, unless it be Cummings, is interested to gainsay such a decree as the complainant seeks. While then, the matter of the bill is such as might properly be the subject of one suit, each defendant is concerned in some part of the litigation, and according to the rule which re-

quires all parties in interest to be brought before the court, they were properly joined.

In respect to the question, how far the validity of the deed of assignment was affected by the neglect to register it within sixty days from the date of its execution, my opinion is different from that of my brother's. If it were necessary, I would say, that the inclination of my mind was opposed to the construction which they have given to the statutes upon the subject. But I will place my conclusion on the point upon grounds less disputable. It may be laid down generally, that the date of a deed is not an essential part of it. [Com. Dig. Fait B. 3.] Hence it has been said, that a deed is good, although it mention no date; or hath a false, or impossible date; provided the real day of its being dated or given, that is, delivered, can be proved. [2 Bla. Com. 304; Co. Litt. 46.] And it has consequently been held, that a person may declare in covenant that the deed was indented, made and concluded, on a day subsequent to the day on which the deed itself is stated on the face of it to have been indented, made and concluded. [4 East's Rep. 477. See also, 2 Ld. Raym. Rep. 1076.] Conceding then, that the assignment from Cummings to Cooper had become inoperative, or void, yet the acknowledgment made by the former that he had signed, sealed and delivered it to the latter, on the first day of April, under the act of 1828, unaided by subsequent legislation, imparted renewed vitality to the deed, and made it effectual from the acknowledgment of delivery. This would seem to be a direct sequence from the common law rule which affirms that a date is unessential to a deed. Whether the law would be the same where the acknowledgment was made before the expiration of the sixty days, I will not, as it is unnecessary, undertake to consider.

If the date of the deed had been stricken out, and another inserted, or a blank left, it cannot be doubted that the deed would have taken effect from its delivery and subsequent acknowledgment; and why the permitting the date to remain unchanged, can have any prejudicial effect, is what I cannot comprehend, if a date is unimportant and superseded by delivery. Upon the other points of the case, I concur in the conclusions of my brother ORMOND.