## McKee v. United States.

1. The military authorities had no power under the act of July 13th, 1861, to license commercial intercourse between the seceding States and the rest of the United States. *The Ouachita Cotton case* (6 Wallace, 521) affirmed.

2. Such trade was not authorized in March, 1864, by regulations prescribed by the Secretary of the Treasury in pursuance of the said act, but, on the contrary, was at that time forbidden by the then existing regulations of the treasury.

3. Even supposing such trade to have been licensed in March, 1864, in pursuance of the act of July 13th, 1861, the license would not have authorized a purchase by a citizen of the United States from any person then holding an office or agency under the government of the so-called Confederate States; all sales, transfers, or conveyances by such persons being made void by the act of July 17th, 1862.

APPEAL from the District Court for Southern Illinois, condemning certain cotton claimed by John H. McKee. The case was this:

Congress, by act of July 13th, 1861,† passed soon after the outbreak of the late insurrection against the United States, enacted that it might be lawful for the President, by proclamation, to declare that the inhabitants of any State or part of a State where such insurrection was existing were

---

* 1 Kent's Commentaries, 230.       † 12 Stat. at Large, 257.

in a state of such insurrection, and that "thereupon all commercial intercourse by and between the same and citizens thereof and citizens of the rest of the United States should cease, and be unlawful so long as such condition of hostility should continue." The same act contained a proviso that the *President* might license and permit commercial intercourse with any such part of the section so declared in a state of insurrection as he, in his discretion, might think most conducive to the public interest; and that such intercourse, so far as by him licensed, should be carried on in pursuance of *rules and regulations prescribed by the Secretary of the Treasury.*

In March, 1864, a date to be noted in the present case, the only regulations prescribed by the secretary on the subject forbade the trade; these prescribing that "*commercial intercourse with localities beyond the lines of military occupation by the United States forces is strictly prohibited.*"

By section 5 of the subsequent act of July 17th, 1862,* it was enacted:

"That to insure the speedy termination of the present rebellion, it shall be the duty of the President of the United States to cause the seizure of all the estate and property, money, stocks, credits, and effects of the persons hereinafter named in this section, and to apply and use the same and the proceeds thereof for the support of the army of the United States."

The enumeration of persons includes any person hereafter holding an *office or agency under the government of the so-called Confederate States* of America. And the section thus concludes:

"And all sales, transfers, or conveyances of any such property shall be null and void; and it shall be a sufficient bar to any suit brought by such person for the possession or use of such property, or any of it, to allege and prove that he is one of the persons described in this section."

---

* 12 Stat. at Large, 590.

In this state of the statutes and treasury regulations, one A. W. McKee, a resident of the then rebel portion of Louisiana, and from October till the autumn of 1864 the general agent of the Treasury Department to purchase and dispose of cotton in the State of Texas, and that part of Louisiana lying west of the Mississippi River, regions then in insurrection against the United States and within the military lines of the Confederacy, was the owner of certain cotton, the subject of the present appeal, and had it in a storehouse there on the bank of the Red River.

While thus stored within the Confederate lines, it was purchased of him there, and paid for on the 4th of March, 1864, by John H. McKee, a loyal citizen of the United States, resident at New Orleans, then in possession and under control of the government; this McKee, the purchaser, being no relative of his by blood, though an adopted son of an uncle. There was some evidence, not satisfactory, however, tending to show that the purchaser, McKee, had a license to trade in insurgent territory, issued by agents of the treasury in proposed conformity with the requirements of the act of July 13th, 1861. But, however this might have been, it seemed to be conceded that he had permission from the military commander of the forces of the United States in that department to pass through the Federal lines into the rebellious region, and bring away any property that he might purchase there; and there was even evidence tending to show that these authorities had actually granted him a license to trade.

The cotton had not yet been removed by J. H. McKee from the storehouse in which it was at the time of the purchase, when, in twelve days after the purchase, the region being now overrun by the Federal army, it was seized by a flotilla of the United States, and, in the face of protest by the purchaser, brought to Cairo and condemned.

The propriety of this condemnation was now the question on appeal.

*Mr. R. M. Corwine, for the appellant; Mr. Hoar, Attorney-General, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

It is a familiar principle of public law, that unlicensed business intercourse with an enemy during a time of war is not permitted. Congress, therefore, in recognition of this principle, when it declared, on the 13th day of July, 1861, that commercial intercourse between the seceding States and the rest of the United States should cease and be unlawful, after the proclamation of the President that a state of insurrection existed, *authorized* the President, in his discretion, to license trade. But in so far as it was licensed, it was to be conducted in accordance with the regulations prescribed by the Secretary of the Treasury. The President proclaimed the fact of insurrection, and provided for a limited commercial intercourse, and the Secretary of the Treasury fixed the manner in which this intercourse should be carried on. Under this act of Congress, the proclamation of the President, and the trade regulations established in pursuance of it, can the purchase of the property in question be protected?

It was made on the 4th of March, 1864, while the war was flagrant, by John II. McKee, a citizen of New Orleans, of A. W. McKee, a resident of Upper Louisiana, and the general agent of the Treasury Department of the Confederate States, to purchase and dispose of cotton in the State of Texas, and that part of Louisiana lying west of the Mississippi River.

Permission had been given the claimant, by the commanding officer of the Department of the Gulf, to pass through the United States lines into Upper Louisiana and bring away any property that he might purchase there. But who authorized him, while there, to make the purchase? There is no sufficient proof in the record that any treasury officer clothed him with this authority, and it is very clear that the power of the military extended no further than to protect him in going into the lines of the enemy and bringing from there any property rightfully acquired. If, as is contended, and as the evidence tends to show, the military authorities went further and granted him also a license to trade, the answer

is, that this court held in *The Ouachita Cotton case*, reported in 6th Wallace, that such a license was void.

But even if McKee had obtained the express permission of one of the treasury agents to go into the Confederate lines and buy cotton, it would not protect him, because the agent would have been acting outside the limits of his authority, as the regulations of the department, in force at the time, strictly prohibited commercial intercourse with localities beyond the lines of military occupation by the United States forces.

There is another view of this case, which is decisive of it, if the proof was ample that the claimant had a license in conformity with treasury regulations, issued under the act of Congress of July 13th, 1861, to trade generally within insurgent territory, for the reason that such a license could give him no right to buy property of A. W. McKee, who held an important official position from the government of the Confederate States.

Section 5 of the act of Congress of July 17th, 1862, prohibited a person occupying the position of A. W. McKee from selling his property, and it follows, as he had no capacity to dispose of it, that the claimant could acquire no title to it.

All licenses to trade issued under the act of July 13th, 1861, are controlled by the provisions of the act of July 17th, 1862, and must be restricted to a permission to trade with those persons who are not within the prohibitions of the latter act.    It is a well-settled principle of law, that in case of the repugnancy between two statutes, the latter one must prevail over the former.    In that particular in which the prior and the latter act cannot consistently stand together, the latter act must be taken, *pro tanto*, as a modification or repeal of the former.

DECREE AFFIRMED.