## LYON & CO. vs. KENT, PAYNE & CO.

[DETINUE FOR COTTON.]

1. *Written charge ; how given or refused.*—A charge moved for in writing, as required by the statute, must be given or refused in the words of the written charge, without addition or qualification of any kind whatever. Any addition or qualification to such a charge, whether written or oral, or by allusion to other charges already given, would be erroneous.

2. *Charge ; when presumed to be oral.*—A charge which the record does not show to have been moved for in writing, will be presumed by this court to have been an oral charge ; and such charge, if correct, may be qualified by coupling it with another charge, whether written or oral, already given, provided the charge already given is also correct.

3. *Agents ; who may be appointed.*—A party may appoint any one his agent who will act as such, and who is mentally competent, such as monks, infants, *femes covert,* persons attainted, outlawed or excommunicated, villains, aliens and slaves.

4. *Same ; authority of.*—And what one may do himself, he may appoint any competent person to do for him. An agent is but the principal acting in another name.

5. *Alien enemy ; powers of, as agent.*—A mercantile partnership in Rich

mond, Virginia, may have appointed a citizen of Illinois, during the rebellion, to receive possession of their cotton in Alabama from their agent here ; but such agent could not, after the suppression of the rebellion, take possession of the cotton here and sell it, so as to divest the owners of their property in it without their acquiescence in such sale.

6. *Change of ownership; insufficiency of evidence to support.*—Evidence tending to show that certain bales of cotton were transferred "absolutely and unconditionally" to another, is not sufficient to support a charge of the court that such transferee thereby became the "owner" of such cotton.

7. *Same; when erroneous.*—A transferee, with power to take possession, merely, of the cotton thus transferred, does not necessarily thereby become the owner ; and a charge that assumes this is erroneous.

8. *Charge; when properly refused.*—A charge that does not conform to the evidence may be refused by the court.

APPEAL from Circuit Court of Marengo.
Tried before Hon. LUTHER R. SMITH.

THIS is an action of detinue for seventy-eight bales of cotton, commenced on the 6th day of October, 1865.

The proofs, so far as necessary to be set forth, tend to show that, on the 17th of January, 1865, the appellees in this court, who were the plaintiffs in the court below, owned the cotton in controversy. They resided at that time in the city of Richmond, in the State of Virginia ; and the cotton was in the custody of their agent, David Browder, in this State. On the day above named, Kent, Payne & Co., said plaintiffs, gave to James W. Singleton, who was then a citizen of Quincy, in the State of Illinois, the following order on their agent, said Browder, to-wit :

"David Browder, Esq., Montgomery, Ala. :

"You will deliver to James W. Singleton and associates all the cotton purchased by you for our account, stored at various points, amounting to between four and five hundred bales, the precise quantity not being recollected ; and oblige,

Yours most truly,

"KENT, PAYNE & CO."

Nothing was said by either party about the purpose of the order, at the time it was given, or the extent of the powers under it.

Singleton testifies that the cotton was *transferred* to him,

and the *purpose* for which the order was given was, to secure the plaintiffs, Kent, Payne & Co., some portion of the value of the cotton transferred, through his skill, labor and outlay in protecting the same from seizure and destruction by the military, under the act of Congress and treasury regulations of the United States. The *consideration* upon which the cotton was transferred to him was, that he should employ his skill, labor and money, in saving the same from seizure and destruction, converting the same into money, and after paying the necessary expenses and internal revenue duties, to *account and pay over to* Kent, Payne & Co., their portion of the net proceeds. The transfer of the cotton to him was in good faith, *absolute* and *unconditional*, and he was *authorized* to sell and dispose of the same.

Kent, one of the plaintiffs below, testifies that he acted for his firm in giving the order to Singleton; but *denies* that he intended to convey any title to the cotton to Singleton, or authority to sell it; but simply intended thereby to enable him to *take possession of and save it.* The terms of the agreement about compensation to Singleton were not agreed upon or stated. Singleton gave no money or valuable consideration for the cotton, and it was not intended to sell it to him, and he did not advance anything toward saving said cotton. The contract with Singleton was intended to last during the war, though nothing was said upon this to Singleton by him.

Browder, the agent of Kent, Payne & Co., in possession of the cotton, testifies that the order was not presented to him until in May or June before the date of his deposition, which bears date in September 7, 1866, and it was then delivered to Singleton's agent.

On the 8th of August, 1865, Singleton, by his agent and attorney in fact, Robertson Topp, sold the cotton in controversy to W. W. Guy, in this State, who put the cotton thus sold to him in the custody of the appellants, who are defendants below, as his warehousemen and bailees; and they were in possession as such bailees at the time this suit was brought.

The order of Kent, Payne & Co. was the only written document that Singleton had which referred to the arrange-

ment between himself and them. But Singleton exhibited to them a pass from President Lincoln, which was in the words following :

" Allow the bearer, James W. Singleton, to pass our lines with any Southern products, and go to any of our trading ports, there subject to the regulations of the treasury department. January 5, 1865.

" A. LINCOLN."

There was much other evidence before the court on the trial below, but it is unnecessary here to refer to it.

The court, among other things, charged the jury as follows :

·" That they are to inquire whether there had been a sale of the cotton in controversy, by the plaintiffs, to Singleton. To constitute a legal sale, the jury should be satisfied that there was a contract on the part of Kent, Payne & Co., to sell and transfer the cotton for a valuable consideration, but that the mere giving of the order to Singleton and associates on Browder, for the delivery of the cotton, was not of itself a sale of the cotton, but it was evidence of a right to take possession of it. If the plaintiffs did not sell or transfer the title of the cotton to Singleton, the jury should inquire whether Singleton became the agent of the plaintiffs, and if so, for what purpose, and the extent of his authority. If Singleton was simply employed as the agent of the plaintiffs to protect the cotton, and not to sell and convert it, then the sale to Guy would confer upon him no greater title than Singleton had. That the jury should examine carefully the several papers which accompanied the sale by Topp, as agent of Singleton, to Guy, relating to the cotton. If these papers, taken in connection with the other evidence in the cause, authorized Singleton or his associates or agents to sell the cotton, then Guy, by his purchase, obtained a good title ; but if these papers, taken in connection with the other evidence in the cause, contained no authority or apparent authority to sell the cotton, then Guy, by his purchase, obtained no title to the cotton, if it belonged to the plaintiffs."

The defendants, by their counsel, requested the court to instruct the jury :

" That if they believe, from the evidence, that W. W. Guy purchased the cotton in good faith of James W. Singleton or his associates, and that at the time of such purchase, Singleton or his associates were in possession of the cotton and of evidences of title to the same, furnished to him by the plaintiffs, then as against Guy or Guy's bailees, the defendants, the plaintiffs cannot recover."

The court gave the charge, but stated that it was given in connection with the main charge of the court.

The defendants, by their counsel, also requested the court to charge the jury :

" That if the jury believe, from the evidence, that James W. Singleton and his associates were held out to the public by the plaintiffs as the *prima facie* owners of the cotton, and were furnished by the plaintiffs with the possession and apparent ownership of the cotton, and that Guy purchased the cotton from Singleton or his associates, in good faith, they must find for the defendants."

The court gave this charge, but stated that it was given in connection with the main charge of the case.

The defendants, by their counsel, also requested the court to charge the jury :

" That if they believe, from the evidence, that the plaintiffs so transferred the cotton to Singleton and his associates, as to enable them to appear to the world as the owners of it, and that Guy was really deceived thereby, and purchased the cotton in good faith, they must find for the defendants.

This charge the court refused to give.

The defendants, by their counsel, requested the court to charge the jury :

" That if they believe, from the evidence, that the plaintiffs and W. W. Guy were equally innocent of any fraud in respect to the cotton, the loss, if any is to result from the transaction, should be borne by that party who was the occasion of the loss."

The charge was given, but in connection with the main charge of the court to the jury.

The defendants, by their counsel, requested the court to charge the jury :

" That if they believe, from the evidence, that the plaintiffs transferred the cotton in question to Singleton and his associates, with the apparent ownership of the same, but with the secret understanding that such transfer was only temporary, and that Guy purchased the cotton in good faith from Singleton or his associates, in ignorance of such secret understanding, and that at the time of such purchase, Singleton was in possession of the cotton and of the *indicia* of title to the same, Guy must be protected, and the plaintiff must bear the loss."

The court gave the charge, but stated it was given in connection with the main charge previously given.

The defendants, by their counsel, also requested the court to charge the jury :

" That if they believe, from the evidence, that the plaintiff, by a secret arrangement, transferred the cotton to J. W. Singleton and associates, to be protected or transported through the Federal lines during the war, under a permit from the President of the United States ; and that Singleton and his associates were put in possession and apparent ownership of the cotton by the plaintiffs, and that Guy purchased the same from Singleton or his associates in good faith, and without notice of any secret arrangement between plaintiffs and Singleton, they must find for the defendants."

This charge was given by the court, but the court stated it was in connection with the main charge already given.

The defendants, by their counsel, also requested the court to charge the jury :

" That if the jury believe, from the evidence, that the plaintiffs transferred the cotton to Singleton without any restrictions upon his power over it, and by their contract, or the papers entrusted to him, authorized the opinion that they had given to Singleton more extensive power over the cotton than was in fact given, and Guy was thereby imposed upon, then the plaintiffs should not be permitted to avail themselves of the imposition."

Which charge the court refused.

The defendants, by their counsel, also requested the court to charge the jury :

" That if they believe, from the testimony, that the plaintiff entered into a fraudulent arrangement with Singleton, by which, and without selling the cotton or passing the legal title to him, he was to take charge of and protect it under his license from the President of the United States, as plaintiff's property, then they have no right to recover in this suit."

Which charge the court refused.

To all of which charges and refusals to charge, and qualifications of charges requested, the defendants, by their counsel, excepted. It does not appear from the record that these charges were moved for in writing. The jury found a verdict in favor of the appellee.

LYON, JONES & R. H. SMITH, for appellant.
CLARKE & LYON, contra.

[This case was elaborately argued at the bar, and briefs were filed by the counsel; but the Reporter has been unable to obtain them.]

PETERS, J.—The charge given by the court, of its own motion, on the trial below, and excepted to by the defendants, was correct. The only negotiation that Singleton had with the firm of Kent, Payne & Co., touching the cotton, took place in January, 1865, at Richmond, Virginia. If there was a sale at all, or any contract entered into between Singleton, a citizen of Illinois, and Kent, Payne & Co., citizens of Virginia, by which any title or interest in the cotton was attempted to be passed from the one to the other, it was wholly void, and incapable of ratification. No trading between these parties was then allowable, without a permit of the government. And the President's pass was not sufficient for that purpose.—*McKee v. United States*, 8 Wall. 163, 166; *The Ouachita Cotton*, 6 Wall. 521, 531; *Brown v. Tarkinton*, 3 Wall. 377, 381; *Kennett v. Chambers*, 14 How. 38, 50. Then, the order alone warned all who looked upon it, who knew the domicil of the parties to it, that it could not be evidence of a legal title. And it was not, unconnected with other proof, a power to sell or dispos of the cotton.

Yet, though the order of itself was not evidence of a sale to Singleton, or a power to sell, it shows that the owners of the cotton had authorized him to *take possession* of it. This he could do, as the agent of the owners. This was not forbidden to him or to them by law, or the policy of the government. They could change the agency of the custody of their cotton from one person to another. And they could make any person, capable of acting as an agent, such agent to take possession of their property for them, and keep it for them. They could transfer its custody from Browder to Singleton without a violation of law. The objection which might be supposed to exist to such an agency during the war, ceased as soon as the war was ended; and its purpose being then legal, it might be legally consummated. Any one, except a lunatic, imbecile, or child of tender years, may be an agent for another. It is said by an eminent author and jurist, that "it is by no means necessary for a person to be *sui juris*, or capable of acting in his or her own right, in order to qualify himself or herself to act for others. Thus, for example, monks, infants, *femes covert*, persons attainted, outlawed or excommunicated, villains and aliens, may be agents for others." Story's Agency, §§ 6, 7, 9. So, a slave, who is *homo non civilis*, a person who is but little above a mere brute in legal rights, may act as the agent of his owner or his hirer.—*Powell v. The State*, 27 Ala. 51; *Stanley v. Nelson*, 28 Ala. 514. It was, then, certainly not unlawful, or against the public policy of the nation, for Kent, Payne & Co. to keep their cotton, and keep it safely, during the late rebellion. It is the undoubted law of agency, that a person may do through another what he could do himself in reference to his own business and his own property; because the agent is but the principal acting in another name. The thing done by the agent is, in law, done by the principal. This is axiomatic and fundamental. It needs no authorities to support it. *Qui facit per alium, facit per se.*—Broom's Max., marg.; 1 Pars. Cont., 5th ed. p. 39, *et seq.;* Story's Agency, § 440. And to this it may be added, that an agent in dealing with the property of his principal, must confine his acts to the limit of his

powers; otherwise, the principal will not be bound.—
1 Pars. Cont. 41, 42, 5th ed.; *Powell v. Henry*, 27 Ala. 612;
*Botts v. McCoy et al.*, 20 Ala. 578; *Allen v. Ogden*, 1 W. C. C.
174. And it is also the duty of one dealing with an agent
to know what his powers are, and the extent of his author-
ity.—*Van Eppes v. Smith*, 21 Ala. 317; *Owings v. Hull*,
9 Pet. 608. Then, the agency to receive the delivery of
the cotton from Browder, in compliance with the order,
was not illegal. If it went beyond that, it was void. And
those who dealt with Singleton were bound to know this,
as they were bound to know the law.—9 Peters, 608, *supra*.

There was conflict in the testimony before the jury as to
the extent and character of the agency of Singleton.
There was a wide difference between his statement and
that of Kent, with whom he transacted the business about
the cotton, as to the purpose and scope of the agency in-
tended to be established. It is not to be presumed that
the parties intended to violate the law. But whether they
did, or not, and what were the powers intended to be con-
ferred upon the agent, are questions for the jury. This is
the effect of the charge. It was pertinent to the testi-
mony, and does not misstate the law. Such a charge is
not error.

It does not appear from the record that the charges
asked by the defendants on the trial below were " moved
for in writing." There were eight of these. Those num-
bered 1, 2, 4, 5, 6, were given, with the verbal remark by
the court that they were given " in connection with the
main charge of the court." Had the charges been in
writing, this would have been a violation of the statute.
The language of the Code is, that " charges moved for by
either party must be in writing, and must be given or re-
fused in the terms in which they are written."—Rev. Code,
§ 2756. The language of the learned judge in the court
below means nothing, or it means that the charges moved
for shall be, to some extent, controlled by the " main
charge" already given. This was a qualification added to
the charge moved for. Such qualifications the language
of the law will not permit. The proper practice is, for the
judge to take the charge and write on it, " given," or, " re-

fused," and *sign his name thereto*, and hand it to the jury when they retire to consider of their verdict, as a part of the record in the case. This is the affirmative declaration of the law, and such affirmation negatives all other modes of procedure.—*Marbury v. Madison*, 1 Cr. 137, 174, 175; *Cohens v. Virginia*, 6 Wheat. 260, 395. It has been decided that such charges must be in writing, else the court is not bound to give them or to refuse them. This is so because the law requires it. For a like reason they must be given as the statute directs.—*Edgar v. The State*, 43 Ala. 45; *Myatts et al. v. Bell*, 41 Ala. 22. The presumption, when the record is silent, must be in favor of the action of the court below, so as to sustain it.—Shep. Dig. p. 572, §§ 145, 146; *Merritt v. Fleming*, 42 Ala. 234; *Bradford v. Barclay*, 42 Ala. 375. Here, then, it must be presumed that the charges asked below were verbal charges, which the court might give or refuse with qualifications, as might be thought proper. And in such case, if the qualification was not erroneous, as it is not here, the action of the court will be sustained. The record does not show that the court, in this exception, was in error.

I now proceed to consider the charges which were asked and refused. These were those numbered *three, seven* and *eight*. These charges do not appear to have been asked in writing. They might have been refused for this reason, but as it is not shown in the record that they were so refused, it will be presumed that this objection was waived by the court below, and they were refused because they embodied incorrect expositions of the law.—*English v. McNair*, 34 Ala. 40.

The *third* charge asked and refused was in these words:

" That if they (the jury) believe, from the evidence, that the plaintiffs so transferred the cotton to Singleton and his associates, as to enable them to appear to the world as the owners of it, and that Guy was really deceived thereby and purchased the cotton in good faith, they must find for the defendants."

There is no proof in the record that Singleton and his associates were " the owners " of the cotton, or pretended to be the owners of it. There was evidence tending to

43

show that the cotton was transferred to Singleton and his associates "absolutely and unconditionally," with power to sell it and dispose of it; but not that they were owners. This charge was not applicable to such testimony. It went beyond it; it was therefore abstract, and was properly refused.

The *seventh* charge asked and refused, was as follows, that is to say:

" That if the jury believe, from the evidence, that the plaintiffs transferred the cotton to Singleton, without any restrictions over it, and by their contract or the papers entrusted to him, authorized the opinion that they had given Singleton more extensive power over the cotton than was in fact given, and Guy was therefore imposed upon, then the plaintiffs should not be permitted to avail themselves of the imposition."

This charge, as an abstract announcement of a principle of law, is correct. To have deceived Guy, and under this deception to have induced him to do, to his own injury and the plaintiff's advantage, what he otherwise would not have done, is a violation of that well settled principle of law which forbids that one shall profit by his own wrong. *Nullus commodum capere potest de injuria sua propria.* Broom's Maxims, 317, 320, 322 (marg.)

But does the evidence set out in the bill of exceptions present such a case as entitles the defendants in the court below to invoke the protection of this principle? There is no evidence that any of the parties to the transaction intended to act in bad faith or fraudulently. The only evidence of title to the cotton possessed by Singleton and his associates, was the order to Browder, and President Lincoln's pass so far as that was connected with the case. These did not show ownership or a power to sell. This was worth nothing in his favor, unless Kent, Payne & Co. had authorized him to make such declarations. There is no proof that they did. He inferred it from what he understood to be his authority. Guy knew that Singleton could not derive any title to the cotton as owner, or interest in it, by the negotiation in Richmond, because the law forbid this. The contract, for that purpose, was wholly

void. He also knew that the papers entrusted to Singleton did not authorize the inference that the plaintiffs had given to him more extensive power over the cotton than was in fact given. There was, then, no evidence upon which to base this charge. It was correctly refused.

The *eighth* charge asked and refused is obnoxious to a like objection. There was no evidence before the jury that the plaintiffs " entered into any fraudulent arrangement with Singleton," at any time or anywhere, about the cotton. The charge was, therefore, abstract; it was inapplicable to the proofs. The motion to have it given to the jury was properly denied.

The judgment of the court below is affirmed.