## MAY ET AL. *vs.* BARNARD.

1. A denial in an answer which is responsive to the allegations of the bill must
   prevail, unless disproved by two witnesses, or one witness with strong corro-
   borating circumstances.
2. When judgments are impeached and sought to be set aside in equity for fraud,
   the plaintiffs in such judgments are indispensable parties to the bill, and no
   decree can be rendered in favor of the complainant, without making them
   parties.
3. Where two defendants, who are neither partners in interest, nor privies in es-
   tate, are charged to be jointly concerned in the perpetration of fraud, the an-
   swer of one cannot be read as evidence against the other.
4. When an account is called for by the bill, and given in the answer, it must be
   regarded as responsive matter, and as *prima facie* evidence of the state of
   accounts between the parties.

ERROR to the Chancery Court of Greene.
Tried before the Hon. W. W. Mason.

Henry Barnard exhibited his bill against John May and
Joel Grizzle, in which he charges that at the November term
of the County Court of Greene for the year 1840, he recov-
ered a judgment against Grizzle for $450 71-100, and costs;
that *fi. fa.* was issued on it, and returned no property found;

that the judgment is yet unsatisfied; that at the commencement of the suit, and for some months afterwards, Grizzle owned a tract of land in Greene county, and a number of slaves, horses, mules, &c., a carriage and harness, wagons, and farming tools, with crop of cotton and corn, in all worth at least $15,000; that Grizzle was in debt, but to no great amount, was intemperate and a confirmed drunkard; that his health of body and mind was impaired; that he was easily influenced, and incapable of attending to business; that May, with intent to defeat the collection of complainant's debt, and the demands of Grizzle's other creditors, availed himself of Grizzle's drunkenness and imbecility, and by improper influences prevailed on G. to execute to him (May) on the 17th August, 1840—complainant's suit being then pending against Grizzle—a deed or deeds, conveying to him (May) all the property of said Grizzle of every kind, in which Mrs. Grizzle united, and it was duly recorded; that by this means Grizzle was left without property when complainant's execution issued, and has remained so up to the filing of the bill; that the deed was fraudulent, and was intended by Grizzle and May to defraud the creditors of the former; that as an inducement for Grizzle to make it, May promised him that he should still have the use of it; that Grizzle was drunk when the deed was made; that after the deed was made, certain creditors of Grizzle threatened to levy on the property, and May, fearing that the deed might be set aside for fraud, procured Grizzle to confess sundry judgments before a Justice of the Peace, for large amounts, some of which were fraudulent, and without consideration; that May procured executions to issue on these judgments, and levies to be made on the personal estate of Grizzle, prior to the levies by the sheriff, and had said property, except the crops, sold to satisfy them, and bought most of it himself, and so claims to hold under his purchase at said sale; that at said sale he prevented the creditors of Grizzle, and others who were present, from bidding, by false representations, Grizzle aiding him, and by this means he was enabled to purchase at an inadequate and unfair price; that said sales were fraudulent and void; that the consideration named in the deed from Grizzle to May was fictitious and nominal; that Grizzle owed May nothing at the time, and

13

some of the debts mentioned in it were also fictitious, but if all were just and paid by May, the price would be grossly inadequate; that Grizzle made another deed to May, but it is not recorded, and was fraudulent; that the deed made on the 17th August, 1840, though absolute on its face, was accompanied by a deed of defeasance from May to Grizzle; that May still holds the property, has sold some of it and received the proceeds; that he sold the crop which at the date of the deed and sale was growing on the premises, and has appropriated the proceeds. The bill calls on May and Grizzle for a full discovery as to all the matters charged, by special interrogatories based on each charge, and especially on May for discovery and account as to the crop of cotton growing on the land in the year 1840; and prays that the deed of 17th August, 1840, may be declared void for fraud, the sales under the executions be set aside; for an account showing what is due complainant, and that the property be subjected to sale to pay the same. With the bill is exhibited a transcript of the record of the judgment at law in favor of the complainant against Grizzle, and also a copy of the deed from Grizzle to May, dated 17th August, 1840.

May answers and admits the recovery of the judgment by complainant against Grizzle, the issue of execution, and the return of ·"no property found." He also admits that at the time the suit was brought, Grizzle owned two hundred and forty acres of land, and twelve or thirteen negroes, a carriage, horses, crop, &c. Denies that said property was worth $15,000 —that Grizzle was in debt beyond the value of his property —that he was a drunkard, and unfit for business when intoxicated, but shrewd and competent when sober. He admits the execution of the deed of the 17th August, 1840, but denies that it was made to defraud the creditors, and states the object of the deed to have been the giving an honest preference to the individual creditors of Grizzle over a creditor to whom he had become bound as surety for one Pearson. He denies that the property intended to be conveyed by that deed was all that Grizzle owned at the time; that he owned three or four other slaves, which were levied on and sold by the sheriff of Greene county for the payment of his debts. He denies that he used any means improper or otherwise to

procure Grizzle to make the deed, but avers that it was done at Grizzle's suggestion, for the purpose of providing for the payment of his own debts, in preference to those for which he was surety; that Grizzle requested respondent to take his property and pay certain debts which were named, and which were all that he could remember, and which amounted to about $4000, which respondent agreed to do, and the deed of the 17th August, 1840, was made to carry out this agreement, and for no other purpose, and the sum of four thousand dollars, mentioned in it as due to respondent, was for the money thus agreed to be paid by him for Grizzle; that Grizzle was sober during these transactions.  He gave Grizzle a writing when the deed was made, the terms of which he does not remember, but it was intended to embody respondent's agreement to pay the debts named, and to account to Grizzle for any surplus the property might bring over and above the debts to be paid by respondent; that respondent took the property in possession, and kept it awhile under this deed, but upon learning that there were executions in the hands of the sheriff of Greene county, the liens of which had attached before the deed was made, he and Grizzle agreed to abandon the deed, and respondent now sets up no claim whatever under it, though he had become liable for some of the debts intended to be secured by it, before it was abandoned, and has since paid them.

After the deed was abandoned, he advised Grizzle that if he wished to secure his individual creditors, it would be best for him to confess judgments before Justices of the Peace in their favor for the sums due them, have executions issued and levies made on the property by a constable, before the sheriff could levy for the security debt.  Grizzle's creditors also pressed him to do this, and it was accordingly done. Respondent had kept the *personal property* out of the way of the sheriff while these arrangements were being made, but delivered it to the constable when they were consummated; that in the meantime the sheriff levied on and sold the land, and respondent became the purchaser for a full and fair consideration, in open market, and without any understanding or agreement whatever with Grizzle; that he bought for himself, and has ever since held for himself alone.  He denies all fraud

in said sale, or that there is any secret trust in favor of Grizzle; that the constable sold the negroes and other personal property according to law, openly and in the presence of a crowd of persons, many of whom were bidders, and several of whom became purchasers; one of Grizzle's creditors bought two of the slaves, and other persons bought horses and mules; that respondent purchased most of the slaves, and the greater portion of the horses, cattle and plantation tools. He denies that his purchase was fraudulent, or that he bought under any secret or public agreement with Grizzle, or that Grizzle was in any manner interested in his purchases, but avers that he bought as the highest bidder, at fair sale, for fair prices; that he paid his own money for the property; that he has ever since held and used it as his own, and that Grizzle, since respondent's purchase, has had no interest whatever in it. He denies that he used any means to prevent persons from bidding at the sale, or had any knowledge of or agency in any effort made by Grizzle, or any other person, to accomplish that end; that he believes the debts on which the judgments were confessed were all really due from Grizzle to the persons claiming them, and that after the sale of all his property, Grizzle still owed many debts; that he claims none of the property purchased by himself, whether real or personal, under any contract made with Grizzle, or under any deed made by him, but he holds the land under his purchase from the sheriff, and the personal estate under his purchase at the sale made by the constable. He admits that he gathered and sold the crop of cotton grown on the land by Grizzle in the year 1840; that it amounted to thirty-eight bales, weighing from 450 to 500 pounds each, but that he gathered it with his own hands, hauled it with his own teams, ginned it at his own gin, furnished the rope and bagging at his own expense, and paid all charges incident to its shipment, storage, and sale out of his own funds—for all these things he claims to be entitled to two-thirds of the cotton, as a fair compensation; that the balance of the cotton was worth about $400, but that before he received this money, Grizzle owed him $784 12-100, for money paid, and assumed to be paid on his account, besides the hire of two slaves for two years, and provisions for his family for the same length of time, and

these last items exceed in value Grizzle's portion of the cotton crop.

Exceptions were taken to this answer and sustained, and the defendant was required to answer fully.

In his further answer, he names and values the slaves and other property conveyed by the deed, as also the slaves, &c., purchased by him at sheriff's and constable's sales, and states what became of it. He further states that the nett proceeds of the cotton crop were $1250, and of the corn crop $200.

Grizzle answers, admitting the justice of complainant's demand. He also states that the deed to May, of the 17th August, 1840, was made at the instance and suggestion of May, and for the purpose of defeating the collection of a large judgment rendered against him as surety for one Pearson; that under that deed he put May in possession of the property conveyed by it, who retained it until the land was sold by the sheriff, and the personalty by the constable, under executions issued by a Justice of the Peace, before whom respondent had confessed sixty-odd judgments in favor of *bona fide* creditors; that when he made the deed to May, he did not owe May four thousand dollars, as recited therein, but May agreed to pay that sum to respondent's creditors, but that he never did do so; that May gave him an instrument of writing made concurrently with the deed, similar in import with the deed itself; that May advised the confessions of judgment, and the sale under them, and promised and agreed with the respondent to purchase the property at the sale by the constable, leave the negroes and stock on the plantation formerly owned by respondent, employ him as overseer, dispose of the crops grown, and apply the nett proceeds to the payment of the sum he had advanced in the purchase of the property, and when this amount, with eight per cent. interest, was refunded him by this means, he was to convey the property to respondent; that pursuant to this agreement, May purchased all the property at the sale by the constable, except a horse or two, and two slaves; that after his purchase, May denied his agreement, and has constantly since kept and claimed the property as his own.

There was no proof by either party, and the cause being submitted on bill, answer and exhibits, the Chancellor held

the deed of 17th August, 1840, to be fraudulent as to creditors, and as such null and void; that the confessed judgments were also fraudulent, and as against the complainant they should be set aside; that the sale under the executions issued on the confessed judgment was fraudulent, and vested no title in the purchaser; that the property in the hands of May should be charged with the payment of complainant's debt, and that an account should be taken to ascertain the amount due him, and a report be made at the next term.

The defendants sued out a writ of error, and in this court assign the decree of the Chancellor for error.

CLARKE & MURPHY for plaintiffs in error.

1. May holds the land under a purchase at sheriff's sale, and the personal property under purchase at constable's sale. This places him, as to title, in the same situation that the plaintiffs in execution would have been, if they had purchased. 9 Ala. 439.

2. The deed may be admitted fraudulent, and that the parties had a right to abandon it, and claim under the sale a *bona fide* judgment. 8 Ala. 115.

3. If a judgment be valid in its creation, i. e. *bona fide*, and upon sufficient consideration, though execution be taken out and enforced with a view to hinder and delay creditors, and it has that effect, yet it is not fraudulent within the statute. 6 Cowen, 284.

4. The judgment was *bona fide.* If then the combination between Grizzle and May was illegal, and May bought to deliver the property back to Grizzle, or bought for Grizzle, then complainant could have levied his execution at law, and sold the property. His remedy at law would have been full, adequate and complete, and he could not come into equity.

5. If there was any impropriety in the sale, or an improper execution of the *fi. fa.*, his mode of redress was to move the court from which the writ issued to set aside the sale. 9 Por. 679.

6. If May and Grizzle did conspire, and did, by covin and fraud, defeat or injure the plaintiff, his redress would be an action on the case at common law. 4 East, 1; 5 Term Rep. 235. If the plaintiffs in the judgments that were confessed

conspired with them, a bill in chancery would be proper to set aside their judgments.

7. The judgment could not be set aside unless the plaintiffs therein were made parties.

E. W. PECK, for defendant.

I. The deed from Grizzle to May is void as to the defendant, because it was made to the intent to hinder and delay the creditors of the said Grizzle. The answer of May makes a general denial of fraud. This is not sufficient to be of any value to him; he should have denied the facts stated, as the evidence of the fraud. 2 Har. & John. 292; 3 Paige, 557.

II. The facts admitted, both in the answer of May and Grizzle, establish the fraudulent character of the deed: 1. The deed is absolute on its face, but a secret defeasance was made by May for the benefit of Grizzle. 2. The consideration is admitted to be simulated. 3. It was made for the express purpose to prevent the property from being seized by the sheriff for the payment of certain debts of defendant Grizzle.

III. A deed fraudulent as to one creditor, is void as to all creditors. Hoke v. Henderson, 3 Dev. 12–14.

IV. A deed void on the ground of absolute fraud, is void *ab initio*, and will not be allowed to stand as security to grantee for advances made. 4 John. Rep. 536; 7 Ala. Rep. 269.

V. If the intent of a deed is to hinder or delay creditors, it is against the statute of frauds, though made upon good consideration, and for the equitable purpose of an equal distribution of an insolvent grantor's effects among his creditors. 8 Dana's Rep. 263.

VI. The purchase of the defendant May at the constable's sale is void as to the defendant in error. The answer of May admits, that after it was discovered that the executions in the hands of the plaintiff had created a lien before the date of the said deed, he advised Grizzle that the only way to save the property from the sheriff was to confess judgments before a Justice of the Peace, have executions issued on them, and levied on the property before a levy was made by the sheriff. That thereupon Grizzle confessed sixty-three judgments,

upon which executions were issued and levied on the property. While this was being done, he, May, secreted the property to prevent a levy by the sheriff. The property was then sold by a constable, and May become the purchaser.

The confession of these judgements was a mere device resorted by Grizzle, on the advice of May, to defeat his creditors in the collection of their debts, after he had failed to effect the same object by the instrumentality of the said deed.

This purchase is void, because these judgments, by confession, are no evidence that the debts on which they were so confessed had any existence in fact.

Because, sales ostensbly made under executions, but in fact collusively, and for the purpose of securing the property from defendant's creditors, stand on the same footing as mere private sales, made with the same object. 7 Dana's Rep. 259; Abney v. Kingsland, 10 Ala 363–364.

Sales, to be valid against creditors, must not only be for valuable consideration, but *bona fide*. A purchaser, even, under the executions of *bona fide* creditors, is not protected, by *their merit*, in his purchase, which he makes in combination with the debtor, to hinder, delay or defraud other creditors. 7 Monroe, 485.

If a debtor causes a judgment to be confessed in favor of a particular creditor, to be made use of for his own purposes, so as to effect a sale and change of his property, the sale is void. 4 John. Ch. Rep. 682.

If a purchaser, knowing of a judgment, purchase with the *view and purpose* to defeat the creditor's execution, it is iniquitous and fraudulent, notwithstanding he may have given a full price; for it is assisting the debtor to injure the creditor. The question of fraud depends *on the motive*. The purchase must be *bona fide*, as well as upon a valuable consideration. 2 Kent's Com. 512; Ayres v. Moore, 2 Stewart, 336.

VII. In this case, the answer of Grizzle is evidence against May. The rule is, where the defendants have a joint interest, or the party against whom the answer is offered, claims through his co-defendant, the answer is evidence. Julian v. Reynolds, 8 Ala. Rep. 683. Here it appears by the answers of both defendants, that May claims through his co-defen-

dant; besides both defendants have an interest in the deed, alleged to be fraudulent, May, by the deed, and Grizzle, by the secret defeasance, executed by May simultaneously with the deed, for his benefit. Again, here the parties had a joint object in view in making the deed, that is, to prevent certain creditors of Grizzle from reaching the property embraced in the deed, to satisfy their debts; and this appears by the answers of both defendants; the answer of each is therefore good evidence against the other. Van Reinsdyke v. Kane, 1 Gall. 630–635; 1 Greenl. Ev. p. 210, § 178; Abney v. Kingsland, 10 Ala. 361.

LIGON, J.—This bill is filed by a judgment creditor against his debtor and one who, as he charges, fraudulently holds property, on a secret trust in favor of the debtor.

1. It charges that the defendant, May, claims to hold under a deed from his co-defendant to himself, dated 17th August, 1840, and that he derives his title from this deed. This charge is denied in express terms by May, and virtually by Grizzle. As these denials of the answers are responsive to the bill, and as there is no testimony to disprove them, they must be taken as evidence for the defendants, and as establishing the fact that the defendant May does not hold the slaves, and other property sought to be charged by the bill, under the deed from his co-defendant Grizzle. Both the defendants are interrogated on this point in the complainant's bill, and the rule is, that if an answer be responsive to a statement or a charge in the bill, or an interrogatory authorized by either, it is evidence for the defendant, and must prevail, unless it is disproved by two witnesses, or one with strong corroborating circumstances. Fenno, et al. v. Sayre & Converse, 3 Ala. Rep. 458; Br. Bank at Huntsville, v. Marshall, 4 Ala. Rep. 60.

This view of the pleadings relieves us from inquiring into the character of the transaction out of which originated the deed of 17th August, 1840; as well as from pronouncing on the validity or invalidity of that instrument.

2. The bill also charges, that the confession of judgment before the justice of the peace by Grizzle was fraudulent, and that some of the debts, on which such judgments were con-

fessed, had no real existence, but were simulated and ficti-
tious. On this charge also, a direct interrogatory in the bill
is founded, and both defendants are called upon to answer.
They both answer, that the debts on which those judgments
are based were *bona fide*, and May answers that they were
confessed by Grizzle, so far as he knows or believes, for the
purpose of preferring these creditors over others, on whose
debts Grizzle was only security. Here, again, the rule here-
tofore laid down may be properly invoked, and as there is
no proof to override the denials of the answer, they must be
regarded as true, and be allowed to establish the fairness of
this transaction. But on this bill, with its present allegations,
to which the creditors of Grizzle, who are plaintiffs in those
judgments, are not parties, the complainants would not be
allowed to inquire into these judgments with the view of im-
peaching, and setting them aside, for the fraud of Grizzle in
confessing them, even if that could be established; since, if
the debts were *bona fide*, and the creditors did not participate
in the fraudulent intent, their rights would not be affected by
his fraud.

The only bearing it could have in a controversy between
the present parties, if it existed at all, would be, by connect-
ing May with it, to use it as a fact from which, with others,
fraud in the sale under the judgments might be presumed ;
but its force, in this respect, is entirely broken, by the posi-
tive responsive denial of its existence in the answer of May,
and the total absence of all proof to establish it.

But it is insisted that, the connection between Grizzle and
May, in the perpetration of the several fraudulent practices
charged in the bill, is so intimate, that the admissions in the
answer of Grizzle should be received as evidence against
May. The well established rule in chancery practice is, that
the answer of one defendant cannot be read as evidence
against his co-defendant. Gresley's Equity Ev. 24. The ex-
ceptions are, where there is an identity of interest, as where
all the defendants are partners in the same transaction; and
where the defendant whose answer is read, and the defendant
sought to be charged, are privies in estate. Gresley Eq. Ev.
25 and 322. There may be other exceptions, but they must
be all founded on the same rule which governs those above

enumerated, and which cannot apply to the case before us. May is in nowise connected with the fraud imputed to Grizzle, except by the unsupported allegations of the bill, and the equally unsupported answer of Grizzle; he is no partner, and not claiming under the deed from Grizzle, he is not his privy in estate; and, we apprehend, it would be difficult to find a princple, or an adjudged case, which would, under such circumstances, allow the reading of the answer of either of these defendants against the other. The case of Abney v. Kingsland, 10 Ala. Rep. 361, and Van Reinsdyke v. Kane, 1 Gall. 620, and the principle laid down in 1 Greenleaf Ev. 210, § 178, to which we have been referred by the defendant's solicitor, fall far short of doing so.

2. We come now to consider that part of the case which relates to the purchase of the slaves, and other property, by May, at the sale made by the constable, under which alone he sets up his title. Here the answers of the two defendants are essentially at variance. Grizzle answers that May purchased for his benefit, that the ownership of the slaves was nominally to be in May, while he was to take the actual management and control of them, and out of the proceeds of their labor to refund to May the money advanced in the purchase, with lawful interest, and when this was done he was to become again the absolute owner of the propersy. He also admits facts, transpiring at the time of the sale, which, taken in connection with what he states concerning his agreement with May about the purchase, would go far to establish a purpose on his part, in which May was a participant, to defraud his creditors. But May denies, in terms the most clear and explicit, all the allegations in the bill of fraud in this sale. We have seen that the answer of Grizzle is not evidence against May, and this part of the complainant's case, like those we have been considering, is wholly unsustained by proof. May is directly called on by the bill to discover and show his title to the property sought to be charged, and in his answer he asserts that he purchased it in open market, at constable's sale, fairly, and for a full consideration. This is responsive matter, and uncontradicted as it is, by any proof on the part of the complainant, it must be regarded as true, and is evidence of his title. Fenno v. Sayre & Converse, 3 Ala. Rep. 458.

4. The bill also charges, that May got possession of, and applied to his own use, the crop of corn and cotton raised by Grizzle in the year 1840, and calls on him to show and set forth, what became of the proceeds, and to discover the amount. To this he answers that the nett proceeds of the corn were two hundred dollars, and of the cotton twelve hundred and fifty dollars; but further answering, to that part of the bill which calls on him to show how he had appropriated the means arising from this source, he sets forth an account of his own against Grizzle, for money paid on his (G.'s) account, for labor in saving and preparing the cotton for market, for expenses attending its shipment and sale, for provisions furnished Grizzle and family, and for slave hire, which greatly exceeds the amount to which the latter would have been entitled out of the proceeds of said crop; to the payment of which he alleges, he applied the money so received by him. To this the complainant opposes no proof whatever, and under the rule laid down by this court, in the case of Powell v. Powell, 7 Ala. Rep. 582, this is responsive matter, and *prima facie* evidence of the state of accounts between the parties. Such being the case, the complainant is entitled to no decree on this part of his bill.

From what has been said, it is manifest that the decree of the chancellor must be reversed; and as there is nothing in the record to justify us in concluding that a different result would spring from remanding the cause, the bill must be here dismissed, without prejudice, the defendant in error paying the costs of this court, and of the Court of Chancery.