## Gordon & Stokes v. Bell et al.

*Bill in Equity to enforce Vendor's Lien for Purchase-money of Land.*

1. *Vendor's lien; its nature, and incidents.* — The vendor's lien for the unpaid purchase-money attaches to the land, in the absence of an agreement to the contrary between the parties at the time of the sale, and follows it into the hands of any subsequent purchaser, unless he can claim the protection accorded to a *bonâ fide* purchaser for valuable consideration without notice, or purchased under the decree of some court where the title itself was litigated.

2. *Marshalling assets between vendor's lien and subsequent mortgage.* — A mortgagee of lands on which there is an outstanding vendor's lien, whose mortgage also includes other lands as well as personal property, will be compelled in equity, at the suit of the vendor, to exhaust the other lands and property, before resorting to the lands affected by the vendor's lien, although he had no notice of that lien when he took his mortgage; and if any part of the personal property has been wasted, or misapplied, through any fault, or want of due diligence on his part, he must bear the loss.

3. *New matter in answer.* — When new matter is brought forward in the answer, not responsive to the allegations of the bill, or to the interrogatories included in or appended to the bill, it is entitled to no weight on the hearing, unless proved.

4. *Proof of title under sheriff's sale.* — When a defendant in a chancery cause claims title under a purchase at sheriff's sale, but not in response to the allegations of the bill, it is not sufficient for him to produce the sheriff's deed, and make it an exhibit to his answer; he must also show the judgment, execution, and levy.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filled by Gordon & Stokes, the appellants, against M. A. Bell and W. C. Oates, on the 30th October, 1871; and sought to enforce a vendor's lien for the unpaid purchase-money of lands. The chancellor dismissed the bill, on final hearing, on pleadings and proof; and his decree is here assigned as error. The facts of the case were thus stated by the Chief Justice: —

"PETERS, C. J. — The facts stated in the bill, and appearing in the answer and proofs, are about these: In 1869, J. A. Clendenin, being indebted to a mercantile firm composed of Gordon, Owens & Stokes, sold a certain tract of land, particularly described in the bill, to the defendant, M. A. Bell, who, for a portion of the purchase-money, executed, and delivered to said Gordon, Owens & Stokes, in payment of Clendenin's debt to them, his promissory note in these words: ' $450. By the 1st of Nov. next, I promise to pay Gordon, Owens & Stokes, or bearer, the sum of four hundred and fifty dollars, for value received in 189.2 acres of land lying in Henry county, Alabama, being the same I have purchased from James A. Clendenin, lying west of the Columbus and Smith ferry road, with interest from date, March 22, 1869.' On this note, the sum of $177.58 was paid on the 9th May, 1871, leaving the balance wholly unpaid

when the bill was filed. The bill charges that this unpaid balance was a lien on the land, and that said M. A. Bell had given his co-defendant, W. C. Oates, a 'conditional mortgage' on these lands, with other property of 'considerable value;' and that said Oates 'was not an innocent purchaser without notice' of the lien asserted by the complainants. The prayer of the bill is for general relief, and for such special relief as is common in such cases; and the 'note,' at the foot of the bill, was in these words: 'The defendants are required to answer each and all the allegations of the bill, as to whether they are not true; and the defendant, W. C. Oates, is required to propound his exact interest in the property alleged to be mortgaged to him, the value of all the property mortgaged; how much of it he has allowed the defendant Bell to use, or remove from the State, or otherwise dispose of; and he is required to answer under oath.'

" Bell did not answer the bill, but a decree *pro confesso* was taken against him. Oates answered, and admitted the sale of the lands to Bell as alleged, and the lien of the note as charged in the bill; but he denied that he had any notice of said lien before the execution of the mortgage referred to in the bill. He also set out the mortgage, and made it an exhibit to his answer, and alleged that it was properly executed and recorded. The mortgage, as made an exhibit to the answer, purports to be made in Henry county in this State, and recites that, 'whereas William C. Oates, of said county, is the security of said M. A. Bell of said county, as the administrator of the estate of Henry C. Tyson, deceased, and has *guaranteed* for said M. A. Bell the payment of a judgment in favor of one A. J. Abbott, and against said M. A. Bell, rendered at the Spring term, 1870, of the circuit court of said county, for the sum of about four hundred and sixty-one dollars: Now know ye further, that said M. A. Bell, for the purpose of holding said Oates harmless on account of said suretyship, and being guarantor as aforesaid, has granted,' &c. The mortgage than describes the lands and other property therein conveyed, which amounted to eight hundred and seventy-five acres, four mules, one yoke of oxen, two wagons, one iron safe, a note for three bales of cotton, and notes, accounts, and claims, for the aggregate sum of about $1,500. The mortgage then further recites, that the mortgagee was to have and to hold the said lands and personal property, 'unto the said W. C. Oates, his heirs, executors, administrators, and assigns, forever; to be void, nevertheless, if said Oates is held harmless by reason of or on account of said suretyship, and said judgment is paid on or before the 3d day of September, 1870; and in case said Oates should incur any liability on account of said suretyship, and have the same to pay, or should said Bell fail to pay said judgment by the 3d day of

[Gordon v. Bell.]

September, 1870, and said Oates have the same to pay, then, in either event,' he was authorized ' to take possession, and sell said property at public auction, to the highest bidder, for cash,' after giving notice, as is usual in such instruments ; and after deducting fees and charges, attorney's fees, &c., for foreclosing the mortgage, the balance of the funds realized from such sale was to be applied to the satisfaction ' of said liability and sum of money which may be paid on said judgment,' and the surplus, if any, to be refunded to said M. A. Bell.

" This mortgage was executed on the 7th day of June, 1870. It does not appear that any liability or loss accrued to said Oates on account of said judgment, or whether or not it was paid by said Bell ; nor what was the character of said guaranty. It further appears from ' Exhibit B,' to said Oates's answer, which is a transcript of the record of Bell's final settlement of his administration of said Tyson's estate, that said Bell appeared in the probate court of said county of Henry, and filed his accounts and vouchers for a final settlement of his said administration, at the March term of said court, held on the 18th day of March, 1872 ; and that this account was sworn to, before the judge of said probate court, on the 18th day of March, 1871. It is possible, however, that the court was really held in 1871, and that the date of the term is an error in the transcript. This transcript shows that said final settlement was completed, and that said W. C. Oates was the attorney of said Bell in the conduct of said settlement ; but it does not appear that any decree was rendered against said Bell on said settlement, except for costs, although the account shows a balance against him of $641.41. Oates alleges in his answer, besides the recitals in the mortgage as shown by the exhibit, that Bell left the State after filing his said account for final settlement, that is, after the 18th day of March, 1871 ; and in order that no decree should be rendered against him, or a decree for as small an amount as possible, ' this defendant receipted said Bell for a just and lawful claim which he held against said Bell as administrator of said Tyson's estate, for necessary professional services as an attorney to said estate, for four hundred dollars ; on which said claim this defendant has never received any payment whatever, and which was allowed said Bell as a credit on said settlement ; and that this defendant, in addition thereunto, has paid an execution from said probate court for about $128, as costs of administration on said settlement of said Tyson's estate ; all of which occurred subsequent to the execution and delivery of said mortgage, making in the aggregate the sum of $528, loss which this defendant has sustained in consequence of being surety on the bond of said Bell as administrator of said estate.'

" The answer alleges, also, that the lands described in the

complainants' bill, and the other lands mentioned in the mortgage, had been sold under execution against said Bell; and that this occurred in the following way : Bell was the administrator *de bonis non* of the estate of one Archie Gunn, deceased, and made final settlement of his administration of said estate on the 6th May, 1871 ; and said estate having been previously declared insolvent, decrees were rendered on said final settlement, in favor of the several creditors of said estate, the several amounts of which are set out in the answer, with the names of the plaintiffs therein. Executions on each of these decrees, and for the costs of court, were duly issued against said Bell as administrator of said estate, and were regularly returned by the sheriff of said county ' No property found ; ' and other executions on said decrees were then issued, against said Bell individually, and the sureties on his official bond as administrator of said estate. These executions were placed in the hands of the sheriff of said county, and were by him levied on the lands described in the complainants' bill, together with other adjacent lands, as the property of said Bell. Under these levies, the said lands were sold by the sheriff, on the first Monday in December, 1871, for the sum of $500 ; and the defendant Oates became the purchaser, paid the purchase-money, and received the sheriff's deed for the said lands. Said Oates alleged in his answer that the plaintiffs in these decrees had no notice of the lien set up by the complainants in their bill; but it appears that notice of that lien was given on the day of the sale, before the sale was made by the sheriff, and before said Oates became the purchaser, or paid the purchase-money. The sheriff's deed for the lands was made an exhibit to the answer.

" The answer alleges, also, that the lands called the ' Satcher lands,' and the ' Chisolm lands,' and the ' Elliot lands,' named in said mortgage, ' are worthless and unsalable ; ' and that ' the promissory notes and accounts mentioned in said mortgage, which were collectible, have been, as this defendant is informed and believes, collected by said Bell, without the knowledge or consent of this defendant ; and all the other personal property covered by the said mortgage was, in the latter part of the fall and winter of the year 1870, as this defendant has been informed and believes, carried out of the State of Alabama, and disposed of by said Bell, during the time this defendant was absent, attending the legislature at Montgomery ; ' ' that said personal property was removed and disposed of by said Bell, without the knowledge or consent of this defendant, and before any final settlement had been made, on the 24th day of April, 1871 ; and until said settlement was made, and this defendant's liability
under said mortgage to take possession or control of any of

[Gordon *v.* Bell.]

the property mentioned and embraced therein. And this defendant avers, that he has never realized, received, or collected in any manner, anything whatever under said mortgage, on account of his losses, as shown herein above, by his suretyship for said Bell; ' ' and this defendant further avers, that, in his opinion and belief, all the property embraced in said mortgage, aside from the lands sought to be condemned by complainants to the payment of said note, is sufficient to indemnify this defendant in losses sustained; and aside from the lands embraced in the said sheriff's deed, defendant positively avers, that all the property embraced in said mortgage, at a fair sale, will not sell for enough to pay defendant the amount of his losses, sustained on account of his suretyship on the administration bond of said Bell.'

" On the hearing before the chancellor, the cause was submitted ' on the bill, decree *pro confesso* against Bell, answer of defendant Oates, and proof.' The only testimony taken was the deposition of the witness Owens, which was taken by the complainants, who proved the value of the lands mentioned in the mortgage to be worth, in his opinion, about $1,500. There was no proof taken of the exhibits to the bill and answer, and no ' note ' of the testimony made on the submission. The chancellor dismissed the bill, and his decree is now assigned as error."

JAS. A. CLENDENIN, for the appellants. — The mortgage to Oates could not defeat the complainants' lien, because he was not a *bonâ fide* purchaser for valuable consideration. His mortgage was not founded on any new consideration, but upon one that was past, and upon a contingent liability alone. A *bonâ fide* purchaser is one who, at the time of his purchase, advances some new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside. Perry on Trusts, 218; *Wells* v. *Morrow*, 38 Ala. 125, and authorities there cited. Service of the bill was perfected on Oates on the 30th October, 1871, long before the accrual of any liability under the mortgage. As to the item of $400 for attorney's fees, Bell was not entitled to a credit for it on his settlement, unless he had actually paid it. *Bates* v. *Vary*, 40 Ala. 421. When he was allowed a credit for it, it became an individual transaction between him and Oates, and did not authorize Oates to foreclose the mortgage to pay it. The judgment for costs was not coerced out of Oates, but was paid voluntarily by him.

2. The mortgage embraced other lands, besides considerable personal property, which are proved to be of value greater than the whole amount claimed by Oates to be due to him;

[Gordon *v*. Bell.]

and he should be required to exhaust this before he can go on the lands affected by the complainants' lien.

3. At the time of the purchase by Oates at sheriff's sale, he had actual notice of the complainants' lien, as well as constructive notice by the pendency of their suit; and he can therefore claim nothing under that purchase. *Center* v. *P. & M. Bank*, 22 Ala. 757., Besides, he failed to prove the judgment, execution, and levy, which were necessary to make out his title as a purchaser at sheriff's sale. *De Vendell* v. *Doe d. Hamilton*, 27 Ala. 165.

W. C. OATES, *contra*, in support of the chancellor's decree, cited the following authorities: *Jordan* v. *Mead*, 12 Ala. 251; *Willis* v. *Rhea & Ross*, 12 Ala. 646; *Daniel* v. *Sorrells*, 9 Ala. 437; *De Vendell* v. *Doe d. Hamilton*, 27 Ala. 157; *Guerrant* v. *Anderson*, 4 Randolph, 208; *Coffin* v. *Ray*, 1 Metc. 212; *Sigourney* v. *Larned*, 10 Pick. 72; *Bayley* v. *Greenleaf*, 1 Wheaton, 46.

PETERS, C. J. — The purchaser of lands in this State, if the same are not paid for at the sale, holds them in trust for the vendor, until the purchase-money is paid; unless it is otherwise agreed between the parties at the time of the purchase. This is called the vendor's lien. *Napier* v. *Jones*, 47 Ala. 90; *Campbell* v. *Roach*, 45 Ala. 666; *Woods* v. *Sullens*, 44 Ala. 686; *Latham* v. *Staples*, 46 Ala. 462. All persons who deal with lands so situated, with notice of this lien, are affected by it; and this lien, with notice of its existence, will prevail over any subsequent title acquired to the same lands, except by decree of some court where the lien itself has been litigated. *Bulger* v. *Holly*, 47 Ala. 453; *Bunkley* v. *Lynch*, 47 Ala. 210; *Sampley* v. *Watson*, 43 Ala. 377; and cases *supra*. It follows from this, that the complainants in this case are entitled to a decree of foreclosure against the lands described in their bill, that is, the "Clendenin place," containing 189.2 acres, if the claim of the defendant Oates is not to be preferred to their lien.

The answer of Oates sets up two grounds, upon each of which, if true, he rests his protection against the complainants' lien. The first ground stands upon the mortgage, made an "Exhibit" to the answer; and the other stands upon the sheriff's deed, which is also an "Exhibit" to the answer. Oates offered no evidence except the answer itself and the "Exhibits" annexed thereto. The answer is only evidence when it is responsive to the allegations of the bill. 1 Brick. Dig. p. 738, §§ 1466, 1467. The allegations of the bill touching the mortgage, in this case, are quite indefinite. But the

[Gordon *v.* Bell.]

interrogatories founded upon them in the foot-note are more pertinent and particular. Generally, the interrogatories should have direct reference to the charges in the bill. If they fail in this, the defendant is not bound to answer them. Story's Eq. Pl. §§ 36, 37, 38; also, Rules Ch. Pr. 11, 12, 13. In this case, the defendant Oates fully answers all the charges in the bill and the interrogatories in the foot-note in reference to the mortgage; and he sets out the mortgage itself, as an "Exhibit." The exhibits to the answer become a part of 'the bill, and need no proof. Rules Ch. Pr. 17, 62. The mere fact that it is .an "Exhibit" proves it, if it is not otherwise impeached, or disproved by evidence taken in the cause. 20 Ala. 200; 23 Ala. 762. And in this way, the mortgage becomes, in effect, a witness in the cause. Then, in this case,. the mortgage shows that there was a large amount of property, real and personal, conveyed by Bell to the defendant Oates on June 7, 1870, in order to indemnify the latter against losses on certain liabilities, which he had undertaken for Bell. It is possible, also, that this conveyance was also an assignment of all Bell's estate, such as would enure to the benefit of all his creditors. Rev. Code, § 1867. But no question of this kind is raised by the bill, and it need not therefore be discussed. In the answer it is not shown that any loss accrued to Oates on account of the guaranty of the payment of the judgment against Bell in favor of Abbot: if, indeed, this guaranty was such as could have been enforced. See *Rigby* v. *Norwood*, 34 Ala. 121. This liability provided for in the mortgage will be left without further notice.

2. Under the .mortgage, Oates was clothed with the power to interpose for the purpose of preventing a waste of the property therein conveyed, so as to protect himself from irreparable loss. 1 Brick. Dig. p. 684, § 650; *Walker* v. *Miller*, 11 Ala. 1067. He could have prevented the removal of the personal property from the State; and if he stood still, and permitted its removal, when he could have prevented it, it was his own fault, and he must suffer the consequences. He does not pretend that the property conveyed in the mortgage, besides the "Clendenin place," on which the complainants assert their claim of lien, was insufficient for his indemnity. He permitted its waste and removal from the State, all save the lands, without any effort to prevent it. His answer, that he did not know or consent to the removal of the personal property, and the collection and waste of the notes and claims by Bell, is not enough to free him from the responsibility of the loss thus accruing, and impose it upon the shoulders of the complainants, who had no power to help themselves. He should have shown, that he used reasonable diligence to exert his powers

over the mortgaged property to prevent such results, and that his efforts were unavailing. His answer is not sufficient to show that he was not in fault. The exhibit to the account of Bell's final settlement appended to the answer shows that Bell had not left this State up to March 18, 1871, the day on which his account was sworn to before the judge of probate; and that account shows, or should show, the liabilities that then existed against the defendant Bell, and also against Oates, as his surety. The mortgagee was then put on his guard, as to the danger of further delay in securing the means for his indemnity under the mortgage. But it does not appear that anything was done at that, or any other time, to prevent the misapplication of the mortgaged property.

It is a well-settled principle in equity, if a party has two funds to which he may resort for payment, he will be compelled, in favor of a creditor having a junior lien, to resort to the fund not bound by the junior lien. *Nelson* v. *Dunn*, 15 Ala. 501; *Chapman* v. *Hamilton*, 19 Ala. 121; also, *Relf* v. *Bibb*, 43 Ala. 519. He should show that the funds provided for his security and indemnity have not been wasted by his negligence. *Henderson* v. *Huey*, 45 Ala. 275. In this case, the mortgagee should be confined to the lands and personal property conveyed in his mortgage, without embracing the lands described in the complainants' bill. Besides this, the answer does not show that there was any decree, on his final settlement, against Bell, which he had failed to pay, except, perhaps, for costs; and if there had been any failure to pay the costs in the probate court, the remedy provided by the mortgage was a sale under the mortgage. At this sale the complainants could have had the lands not held under their lien first sold. *Relf* v. *Bibb*, 43 Ala. 519, *supra*. Opportunity would thus have been afforded the complainants to force the lands conveyed in the mortgage to sell for such a price as would have discharged the mortgage liabilities. Owens testifies, that the lands were worth $1,500; yet, as the mortgage liability was settled, putting it at the figures stated in the answer, they are sought to be held by Oates under the mortgage, without sale or foreclosure, at the sum of $528, a little above one third of their "cash value," as Owens testifies. The claim thus presented under the mortgage, by the defendant Oates, is not sufficient to bar the complainants' right of foreclosure under their lien, asserted in their bill.

3. I turn now to the claim of the defendant Oates, under the sheriff's deed. The title thus asserted is not responsive to any allegation in the bill. It is altogether new matter in defence, which is not mentioned in the bill, and which the defendants are not called upon to answer, and about which the bill does

not seek to elicit any discovery, Such allegations, not being responsive to some allegation of the bill, must be supported by proof outside of the answer itself, or they fail for want of proof. *Cummings et al.* v. *McCullough*, 5 Ala. 324; *Manning* v. *Manning*, 8 Ala. 138.

4. There is no proof of these allegations but the sheriff's deed, which, being an exhibit to the answer, is to be taken as true until impeached. Rules of Ch. Pr. 17; 23 Ala. 346, 762; 20 Ala. 200. But a sheriff's deed is not, alone, sufficient to prove a title under a sheriff's sale. For this purpose, the proofs must show *a judgment, execution thereon, levy, and the sheriff's deed.* *Ware* v. *Bradford*, 2 Ala. 676. There was no proof offered by the defendant Oates of any judgment, or any levy; and there was no proof that the plaintiffs in the judgments recited in the sheriff's deed did not have notice of the complainants' lien. Oates himself, and these plaintiffs, were all competent witnesses. Rev. Code, § 2704. The mere averment of these facts in the answer is not enough to prove them. They are not responsive allegations, and they must be established by other evidence than the answer. 5 Ala. 324; 8 Ala. 138, *supra.* The title under the sheriff's deed is not proven, and it must fail. The judgment of the court below must therefore be reversed, at the costs of said appellees, Bell and Oates.

The judgment of the court below is reversed, and the cause is remanded to the court below for further proceedings according to law. Bell and Oates will pay the costs of this appeal, in this court and the court below.

