# Henderson v. Ala. Gold Life Insurance Company.

# Henderson v. Horton.

## *Bills in Equity by Creditors, for Marshalling Securities.*

1. *Marshalling securities as between creditors.*—When one creditor has a lien upon two distinct funds, and another creditor has a lien upon one of them only, a court of equity will, at the instance of the latter, compel the former creditor to exhaust the separate fund before resorting to the fund common to both; but, whether this principle applies to a lien acquired by the service of an attachment or garnishment at law, is not decided.

2. *Attachment and garnishment; what demands may be reached.*—Proceedings by attachment and garnishment, in courts of law, are purely of statutory origin, and can operate only on the legal rights of the defendant in attachment—that is, such rights as he could enforce by action at law in his own name; and money in the hands of a garnishee can not be reached, unless the defendant himself could recover it of the garnishee by action of debt or *indebitatus assumpsit.*

3. *Assignments of policy of life-insurance; garnishment against first assignee, after assignment of surplus.*—The holder of a policy of life-insurance having transferred it as collateral security to one of his creditors, and afterwards assigned his interest in the residue to a second creditor, other creditors can not, by garnishment subsequently sued out against the first assignee, reach the surplus remaining in his hands after the secured debts have been paid; nor can they maintain a bill in equity, the money having been paid into court by the garnishee, to compel the second assignee to exhaust other securities held by him before resorting to the surplus.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

These two cases were consolidated by the order of the chancellor in the court below, and were argued and considered as one case. The bills were filed on the 11th March, 1880,—one by the Alabama Gold Life Insurance Company, a domestic corporation, and the other by Frank S. Horton—against George G. Duffee and William Henderson; and sought to enjoin said Henderson, as the assignee of Duffee, from proceeding further at law to claim a fund, which had been deposited in court by Joseph Steiner, as garnishee, in suits instituted by the complainants respectively against said Duffee; and to compel him to first exhaust other securities alleged to be held by him for the payment of his debt, in order that the complainants might obtain, out of the said fund, satisfaction of the judgments.

which they had recovered in their said actions at law against Duffee.

The suit in favor of the Alabama Gold Life Insurance Company against Duffee was commenced on the 12th August, 1879; and a garnishment was sued out against Steiner, as the debtor of Duffee, which was served on the garnishee on the 13th August, 1879. The action in favor of Horton was also commenced on the 12th August, 1879; and a garnishment was sued out against Steiner, which was served on him on the 14th August. In each case, judgment by default was rendered against Duffee, the defendant in the original suits, on the 22d November, 1879. The garnishee, in each case, filed an answer, substantially the same; stating, among other things, that Duffee became indebted to him on the 26th August, 1877, by promissory note for $1,458, and, to secure the payment of that note, on that day transferred to him, as collateral security, a policy of insurance for $5,000 on the life of one Martin Robbins, who was then living, "and all his (said Duffee's) interest in the partnership assets belonging to the late firm of Dunklin, Duffee & Co.; and it was then and there agreed between said Duffee and this garnishee, that the proceeds of said policy of insurance and said partnership interest should be applied by this garnishee to payment of said note for $1,458, and for the residue, after paying expenses of collection, &c., he was to account to said Duffee." The answer further stated, that said Robbins, whose life was insured, died on or about August 1st, 1879, and proof of his death, &c., had been prepared and forwarded to the insurance company; and that the garnishee had been notified, "on or about December 17th, 1878, that said Duffee had transferred whatever interest he had in said policy, after this affiant's said claims were satisfied, to W. B. Montgomery, who resides near Starkville, Mississippi, and who now claims said residue, if any there be, as his property." A supplemental answer was afterwards filed by the garnishee, alleging that he had collected the money due on the policy, and, after paying his own claims, necessary expenses, &c., had remaining in his hands a balance of $2,267.38, which he brought into court; and he prayed that the plaintiffs in the garnishments and said W. B. Montgomery "be required to interplead, and to propound their respective claims to said fund, and that he be discharged."

The record does not show that Montgomery was ever notified of the garnishment proceedings; but, on the 4th March, 1880, a petition was filed in the causes by William Henderson, alleging that, on January 15th, 1880, he had purchased from Montgomery said Duffee's note, for which the policy of insurance, or Duffee's interest in the residue remaining after the satisfaction of Steiner's claims, had been assigned as collateral se-

3

curity, and had taken from Montgomery "an assignment of all his right, title and interest in said collateral security;" and claiming and praying that the money in court should be paid over to him. At this stage of the proceedings the bills in these cases were filed, alleging that Duffee's debt to Montgomery was secured by mortgages on real and personal property, as well as by the assignment of the policy of insurance; and praying that Henderson, as the assignee of Montgomery and Duffee, be required to foreclose these mortgages, and be enjoined from further proceedings to claim the fund in court, until he had foreclosed the mortgages, and had accounted for the proceeds of sale of the mortgaged property.

The terms of the assignment by Duffee to Steiner, as expressed in the latter's receipt, which was made a part of his answer to the garnishment, were these: "Received, Mobile, August 27, 1877, of George G. Duffee, policy of life-insurance company, No. 39,871, issued by the Mutual Benefit Life Insurance Company of Newark, N. J., on the life of Martin Robbins, for the sum of $5,000; also, an assignment and transfer of the entire interest of said Duffee in all the assets, real and personal, now belonging to the late firm of Dunklin, Duffee & Co., with full power of attorney to control, manage, and dispose of said assets. Said policy and said partnership interest are received by me as collateral security for the payment of a note for $1,458, this day made by said Duffee, payable to my order, at the Mobile Savings Bank, twelve months after date. The proceeds of said policy, and said partnership interest, are to be applied by me to the payment of said note, and the residue, after paying necessary expenses of collection, &c., I am to account for to said Duffee."

Duffee acquired the policy of insurance by assignment, or transfer as collateral security, from one M. C. Robbins, who was indebted to him; and as further security for this indebtedness, said Robbins executed to him a mortgage on certain real estate in Mobile, and a chattel mortgage. These mortgages were transferred and assigned by Duffee, on the 30th December, 1877, together with the debt which they were given to secure, to said W. B. Montgomery, to whom he was indebted; and on the 13th January, 1878, as further security for said indebtedness, he also transferred to said Montgomery all his interest in the policy of insurance after payment of Steiner's claim. Duffee was also indebted to said William Henderson, by promissory note due December 1st, 1877; and as security for this debt, he assigned to said Henderson on the 15th August, 1879 (the day after the service of the garnishments on Steiner), whatever surplus might remain of the moneys realized on these collateral securities after the claims of Steiner and Montgomery

were paid. On the 15th January, 1880, Henderson purchased from Montgomery the note held by him against Duffee, and took an assignment of all his interest in the policy and other collaterals transferred by Duffee; and in his petition to the Circuit Court, as well as in his answers to the bills, he claimed the fund in court by virtue of both of these assignments.

Separate answers were filed by the defendants, stating substantially the same facts; and each demurred to the bills, both for want of equity, and for the want of necessary parties. The chancellor refused to dismiss the bills, on motion, for want of equity, but required that M. C. Robbins should be brought in as a party. Robbins was then brought in by an amendment to the bill, and filed an answer submitting to the jurisdiction of the court, and offering to pay his indebtedness to Steiner as the court might direct. The chancellor then overruled the demurrers to the bill, and ordered an account to be stated by the register, 1st, as to the indebtedness of Robbins to Duffee; 2d, as to the indebtedness of Duffee to Henderson, on the claim transferred by Montgomery to Henderson; and, 3d, of the amount due to the complainants on their respective judgments against Duffee. The account stated by the register, under this reference, showed that Robbins owed Duffee, in excess of the fund paid into court by Steiner as garnishee, the sum of $1,278.91; and that Duffee owed Montgomery, or Henderson as his assignee, on the claim assigned, the sum of $2,129.08. The chancellor confirmed the register's report, after making some immaterial corrections, and rendered a decree, directing Robbins to pay into court the balance due to Duffee, and ordering the register to demand and bring into court the sum deposited by Steiner with the clerk of the Circuit Court; but he made no decree as to the distribution of the funds.

The appeal is sued out by Henderson, who here assigns as error the decree overruling his demurrer and motion to dismiss the bill for want of equity, and the decree confirming the register's report.

F. G. Bromberg, for appellant.—The bills are without equity, because they attempt to supplement the statutory remedy by garnishment, by the equitable remedy of injunction.—*Phillips v. Ash*, 63 Ala. 414; Drake on Attachment, § 454. They show, also, that the legal title to the proceeds of the insurance policy was not in Duffee when the garnishment was served on Steiner, nor when he answered, but had passed by assignment to Montgomery more than twelve months before that time. That garnishment acts only on the legal rights of the defendant, see *Toomer v. Randolph*, 60 Ala. 356; *Henry v. Murphy*, 54 Ala. 246; *Godden v. Pierson*, 42 Ala. 370; *Jones v. Crews*, 64 Ala.

368; Drake on Attachment, § 457. If Duffee had been the owner of the insurance policy, the assignment to Montgomery would have divested him of the right to sue Steiner for the proceeds, and would have conveyed that right to Montgomery. *Mardis v. Shackelford*, 6 Ala. 433; *Hamilton v. Kane*, 2 Hall, N. Y. 522; Code, § 2890. A policy of life insurance is a *chose* in action.—*St. John v. Insurance Company*, 13 N. Y. 39; *Palmer v. Merrill*, 6 Cush. (Mass.) 286. When a *chose* in action has been equitably assigned, it is not subject to attachment as the property of the assignor.— *United States v. Vaughn*, 3 Binney, 394. There being in Steiner's hands, when the garnishments were served on him, nothing for which Duffee could sue him at law, there was nothing on which the garnishments could operate, and the complainants acquired no lien on any fund. Drake on Attachment, § 454; *Wolffe v. Tappan*, 5 Dana, Ky. 136; *Treadwell v. Brown*, 43 N. H. 290. Montgomery was not served with garnishment; and on the 15th August, 1879, the complainants having neither judgment nor execution against Duffee, he might lawfully assign to Henderson, as he did, all his reversionary interest in the surplus which might remain of the fund after Montgomery's claim was satisfied.—*Flewellen v. Crane*, 58 Ala. 627; *Crawford v. Kirksey*, 55 Ala. 293.

OVERALL & BESTOR, *contra.*—The equity of the bill rests on the familiar principle, that when one creditor has a demand against two funds or estates, and another has a demand against one only of those funds or estates, the latter is entitled to throw the former on the separate fund not common to both.—1 Story's Equity, § 663, and notes; *Nelson v. Dunn*, 15 Ala. 501; *Gordon v. Bell*, 50 Ala. 220; *Bryant v. Stephens*, 58 Ala. 641. The complainants are judgment creditors of Duffee, and are seeking to condemn his interest in claims and securities transferred to him by his debtor, M. C. Robbins, who admits his liability, declares his willingness to pay as the court may direct, and submits himself to its jurisdiction. The fund is in court, all the parties in interest are before the court, and the only question is the distribution of the fund according to the principles which obtain in equity. The claim of Henderson, as the assignee of Montgomery, it is admitted, must be first paid; not out of the fund paid in by the garnishee, but first out of the debt due by Robbins, and the residue only out of the fund in court; and then the complainants' judgments, in the order in which their garnishments were served, which will exhaust the fund, before the individual claim of Henderson, founded on his assignment from Duffee, is reached.

SOMERVILLE, J.—The purpose of the present bill, on

the part of the complainants, is to effect a *marshalling* of certain securities held by the appellant, Henderson, as the creditor of one Duffee, of whom also each of the complainants are judgment creditors. Duffee held a policy of insurance on the life of one Robbins, which he transferred as collateral security to Joseph Steiner, to secure a debt due him, in regard to the validity and priority of which there is no contest. He also owed Montgomery a debt of about two thousand dollars, and, to secure payment of this sum, he executed a mortgage to him on certain real property, also another mortgage on certain chattels, and he made, in addition to these securities, an assignment to Montgomery of his interest in the assets of the dissolved copartnership of Dunklin, Duffee & Co., *as well as the residue in said life policy*, then in the hands of Steiner. This assignment was made *in January, 1878*. After these events, in November, 1879, each of the complainants, who are now appellees in this court, recovered judgment on their respective claims in the Circuit Court of Mobile county; and during the progress of these suits, served writs of garnishment on Joseph Steiner, summoning him to answer as the garnishee and debtor of Duffee. The garnishment process in favor of the Alabama Gold Life Insurance Company was served upon Steiner on the 12th of August, 1879, and that of Horton, the other complainant, on the day following. On the 15th day of August, after service of these garnishment writs, Duffee assigned to Henderson all of his interest in the surplus money arising from the insurance policy, subject to the claims of Steiner and Montgomery, which were prior in time and right. *Montgomery also assigned his claims on Duffee to Henderson, with all of his securities above described.*

The purpose of each of the bills under consideration—which were, on the hearing, *consolidated* into one cause by the chancellor—is to force Henderson, as the assignee of Montgomery, to exhaust his remedy against the mortgaged property, and the assets of Dunklin, Duffee & Co., before proceeding against the insurance money in the garnishee's hands. This is upon the principle, that where one creditor has a lien upon *two* funds or estates, and another creditor has a lien upon *one* of them only, the latter is entitled, in equity, to throw the former on the fund not common to both.—1 Story's Eq. Jur. § 663; *Gordon v. Bell*, 50 Ala. 220; *Nelson v. Dunn*, 15 Ala. 501.

Conceding that a garnishment or attachment lien, acquired by summoning a garnishee to answer at law, would entitle the plaintiff so acquiring it to such a remedy in a court of equity,— a point unnecessary to be decided—it becomes material to inquire whether, under the facts of this case, the complainants have any such lien on the fund here in controversy. If not,

the whole case made by the bill is manifestly devoid of equity.

It has often been held, and may be considered as settled by our decisions, that attachment and garnishment proceedings sued out in courts of law, which are purely of statutory origin, can operate only on the *legal* rights of the defendant in attachment—at least, in cases where no fraud intervenes—or, in other words, upon such rights as the defendant could enforce, in his own name, by action at law. If money in the hands of a garnishee is sought to be reached, it must be of a character which the defendant in attachment could recover of the garnishee by action of debt, or *indebitatus assumpsit.*—*Henry v. Murphy & Co.*, 54 Ala. 246; 1 Brick. Dig. 175, §§ 313–14; *Jones v. Crews,*. 64 Ala. 368; *Toomer v. Randolph*, 60 Ala. 356.

It is plain from the facts disclosed in the garnishee's answer, and the other pleadings in the Circuit Court, upon the propounding of Henderson's claim, which are also matters of proof in this cause, that the *legal title of the money* in Steiner's hands, admitted by him to be a balance of over twenty-two hundred dollars, had *passed out of him before the service of the garnishment writ* upon him. It was transferred to Montgomery,. through the assignment made to him by Duffee in January, 1878,—considerably more than a year before the garnishment writ was issued. This fact is fatal to the garnishment proceeding; for no balance was in Steiner's hands, as the debtor of Duffee, upon which the lien could operate. Steiner owed Duffee nothing, but he owed Montgomery, as the assignee of Duffee, and Montgomery was not summoned as garnishee in the cause. The latter could have sued for the whole of the residue of the life policy fund, and if it was more than adequate to satisfy his claim, *he*, and not Steiner, would have been debtor to Duffee for the surplus, if any.

The remedy afforded by the statute is, therefore, clearly inadequate *to reach* this surplus by garnishment against Steiner, unless by successful contest of the garnishee's answer in the Circuit Court pursuant to the provisions of the Code authorizing such a controversy.—Code, §§ 3302–3. If Duffee had any interest in it, only his legal, and not his equitable rights, as we have shown, could be reached by garnishment. Nor in such cases is it permissible to resort to a court of equity, to supplement the defects of the statute.—*Phillips v. Ash's Heirs*, 63 Ala. 414; *Janney v. Buell and Wife*, 55 Ala. 408; *McClellan v. Lipscomb*, 56 Ala. 255. In this view of the case, the complainants had no lien on the fund in controversy, and the chancellor erred in granting the relief prayed; and his decree is hereby reversed, and the cause remanded.